The STATE of Ohio, Appellee,

v.

BURROWS, Appellant.

[Cite as *State v. Burrows* (1992), 80 Ohio App.3d 404.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 60310.

Decided June 1, 1992.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *John Reulbach,* Assistant Prosecuting Attorney, for appellee.

*Michael E. Murman,* for appellant.

---

FRANCIS E. SWEENEY, Judge.

Defendant-appellant, Mary J. Burrows, was indicted for theft in violation of R.C. 2913.02(A)(1). After a bench trial, she was found guilty as indicted. Appellant timely appeals her conviction. For the reasons that follow, we reverse.

The pertinent facts are as follows:

Appellant was a bookkeeper at the Multi–Management Company, which manages several apartment complexes throughout the Greater Cleveland area. Craig Koslen, vice-president of Multi–Management, testified that during the course of changing banks, it came to his attention that there was an apparent shortage in one of the bank accounts. Apparently, appellant wrote a personal check to cover the shortage, but her check subsequently bounced. Thereafter, Koslen began an investigation into all accounts handled by appellant.

Koslen testified as to the process whereby Multi–Management collects and accounts for its rental payments. His testimony is as follows:

A lessee or prospective lessee would tender a check or pay cash for payment of rent, applications fees, security deposits, etc. with a rental agent at the relevant apartment complex. If the lessee paid in cash, the rental agent would make out a receipt; otherwise, the cancelled check would suffice as a receipt. The rental agent would check his ledger to make sure the amount received was correct and mark the ledger as payment received. The rental agent would also enter the payment received on a four-part, multi-colored deposit slip.

Thereafter, the property manager would collect the payment from the rental agent. The property manager would initial the green copy of the deposit slip after making certain the payment was properly marked (requiring the property manager to count any cash payments) and leave it with the rental agent. The initialed green copy of the deposit slip left with the rental agent relieved the rental agent of any responsibility for the payments received.

Thereafter, the property manager became responsible for the payments received.

Next, the property manager would bring the remainder of the deposit slip and the payment to Multi–Management's office and deliver it to a bookkeeper. The bookkeeper would initial the pink copy of the deposit slip after making certain the payment was properly marked (requiring the bookkeeper to count any cash payments) and return the pink copy to the property manager. The initialed pink copy of the deposit slip given to the property manager relieved the property manager of any responsibility for the payments received. Thereafter, the bookkeeper became responsible for the payments received. The bookkeeper would then mark the payment in a "monthly deposit record listing" and assign the payment a deposit number in order to deposit the payment into the relevant bank account. The bookkeeper would also list the deposit in a separate ledger and note the number it was assigned in the monthly deposit record.

If the deposit was cash, the bookkeeper would deliver the payment to Craig Koslen's office or that of the office manager, Betty Patterson, who would initial the yellow copy of the deposit slip after making certain the payment was properly marked (requiring Koslen or Patterson to count the cash payment) and return it to the bookkeeper. Again, the initialed yellow copy of the deposit slip given to the bookkeeper relieved the bookkeeper of any responsibility for the payments received. Thereafter, Koslen or Patterson would become responsible for the payments received. Koslen or Patterson would also sign off on the bookkeeper's monthly deposit record after making certain it corresponded with the figures marked on the deposit slip. The monthly deposit record, the deposit slips, and the bookkeeper's ledger were to all correspond. Finally, the yellow and white copies of the deposit slip were delivered to the bank, along with the payments received for deposit therein. The bank kept the white copy for its own records.

During the course of his investigation, Koslen discovered, with respect to certain cash deposits, that the figures on numerous pink slips, which had been initialed by appellant, and the figures on appellant's ledger did not correspond with the figures marked in the monthly deposit record. Koslen determined this by checking the pink slip with appellant's ledger, which contained the relevant monthly deposit number. Next, Koslen checked the monthly deposit record and the corresponding monthly deposit number. The corresponding monthly deposit was less than that noted on the pink slip or on the ledger. Koslen further testified that the yellow copy would always be missing for these transactions because that money did not make it to the bank. Ultimately, the total amount of money missing equaled $12,800.44.

It is undisputed that appellant was an employee of Multi–Management at all relevant times and that appellant was authorized to obtain or exert control over the money brought in by the property managers.

Based on the above evidence, appellant was found guilty as indicted.

Appellant timely appeals, raising the following two interrelated assignments of error for our review:

"I. The trial court erred in overruling appellant's Rule 29 motion for acquittal and in entering a judgment of conviction where the state failed to prove each and every element of the crime charged in the indictment beyond a reasonable doubt thereby violating appellant's Fifth and Fourteenth Amendment rights to due process of law.

"II. The trial court erred in overruling appellant's motion for acquittal where the prosecution's case was based solely on circumstantial evidence and is not irreconcilable with reasonable theories of innocence."

Appellant argues the state failed to prove each and every element of the crime charged in the indictment and, therefore, the trial court erred in overruling her motion for acquittal pursuant to Crim.R. 29. This argument has merit.

Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus. In the present case, the evidence presented at trial was insufficient to sustain appellant's conviction for the offense presented in the indictment, *i.e.*, theft in violation of R.C. 2913.-02(A)(1).

The theft statute (R.C. 2913.02) provides in relevant part:

"(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

"(1) Without the consent of the owner or person authorized to give consent;

"(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;

"(3) By deception;

"(4) By threat."

The evidence presented at trial revealed an elaborate system by which Multi–Management collected and accounted for payments for rent and other services received from tenants or prospective tenants at three apartment

complexes managed by Multi–Management. Appellant was a bookkeeper responsible for various accounts relevant therein. Through the use of various exhibits and the testimony of employees of Multi–Management, the evidence established that various cash transactions could not be accounted for beyond the chain of custody of such transactions which would last place the cash in appellant's hands. However, all witnesses presented by the state testified that appellant was authorized by Multi–Management, the owner of the property, to obtain or exert control over the relevant cash transactions. Therefore, the evidence presented at trial does not establish that appellant " * * * knowingly obtain[ed] or exert[ed] control over * * * the property * * * [w]ithout the consent of the owner or person authorized to give consent."

While the evidence arguably establishes that appellant violated R.C. 2913.-02(A)(2), our decision is based on the offense for which appellant was indicted, tried and convicted. It is not within the province of a reviewing court to amend the indictment to conform to the evidence. See, generally, Crim.R. 7(D).

Moreover, our decision is supported by this court's decision in *State v. Durkay* (June 5, 1986), Cuyahoga App. No. 50654, unreported, 1986 WL 6359. In *Durkay*, the defendant was indicted for attempted grand theft pursuant to R.C. 2923.02 and R.C. 2913.02(A)(1). The evidence at trial indicated that the defendant, who had previously surrendered his insurance license, attempted to solicit a former client to purchase insurance. However, the evidence revealed that defendant's former client never sent defendant any premium payments. This court, in reversing the defendant's conviction, held that the trial court erred in not granting a judgment of acquittal under Crim.R. 29(A) since there was no evidence that the defendant attempted to deprive the victim, his former client, of her property without her consent. *Id.* at 7–8. We noted:

"If Ms. Mires had actually sent her insurance premium payments to the appellant she would have acted voluntarily, she [sic] would not have acted without her consent." *Id.*

Similarly, in the present case, appellant obtained or exerted control over Multi–Management's property with Multi–Management's consent. As in *Durkay*, appellant was indicted incorrectly.

Accordingly, appellant's first assignment of error is sustained.

However, appellant's second assignment of error, to the extent that it relies on *State v. Kulig* (1974), 37 Ohio St.2d 157, 66 O.O.2d 351, 309 N.E.2d 897, is overruled. The *Kulig* rule on circumstantial evidence was expressly over-

ruled by the Ohio Supreme Court in *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph one of the syllabus.

*Judgment reversed
and appellant discharged.*

MATIA, C.J., concurs.

NAHRA, J., dissents.

NAHRA, Judge, dissenting.

The statute under which defendant was charged says "[n]o person * * * shall knowingly obtain *or* exert control over * * * property * * * (1) [w]ithout the consent of the owner * * *." (Emphasis added.) Here the defendant obtained money with the consent of the owner, but when she used it for her own purposes she was exerting control over it without the consent of the owner. Thus, I think she was properly convicted under R.C. 2913.02(A)(1), even though she could also have been convicted under (A)(2).