OPINION
On September 5, 1997, Darrell Dortch was indicted for one count of theft of over $500.00 in violation of R.C. 2913.02(A)(1). At trial, Dortch moved for a Rule 29 acquittal following the State's case and then again at the end of trial. These motions were overruled. Dortch was found guilty by jury of the theft charge and sentenced to eight months incarceration. He now appeals this judgment.
Darrell Dortch was employed part-time as a truck driver for Steve Rauch Company, a demolition company that contracts to tear down buildings and recover and sell scrap iron and other salvage. At this time, Rauch had entered a contract to tear down the old NCR building and to recover the scrap metal. He was permitted under the contract to sell the scrap metal to whomever he chose. In this regard, Rauch also entered a contract with Cohen Brothers in Middletown to receive all of the scrap from the NCR job.
Rauch testified at trial as to his customary practice of scrap metal pick-up and delivery. Initially, the foreman at the job site would radio Rauch that a trailer was loaded with scrap and ready for pick-up. Subsequently, Rauch would send a driver with a Rauch tractor to the site, in this case NCR, to pick up the trailer. Once the trailer was attached to the tractor, the foreman would again contact Rauch and inform him of the contents of the load and that the driver was on his way to the salvage yard. From there, the driver would deliver the scrap metal to the salvage yard to which Rauch had instructed him to go. For the NCR job, as well as most of Rauch's jobs, all scrap was to go to Cohen Brothers in Middletown.
Upon his arrival at Cohen, the driver would have the load weighed and then drop off the scrap. Afterward, Cohen would provide the driver with a ticket which stated the truck number, the type of material delivered, the weight of material, Steve Rauch's name and the driver's signature. The driver was to immediately return this ticket to Rauch. The contract between Rauch and Cohen provided for payment every thirty days for the scrap delivered during that time period. No cash ever exchanged hands between Cohen and the drivers. Notably, Dortch had completed this very routine between Rauch's, a job site and Cohen's more than a hundred times.
On April 21, 1997, Rauch instructed Dortch to pick up scrap metal from NCR and deliver it to Cohen Brothers. When Dortch arrived at NCR, the foreman contacted Rauch and advised him they were hooking the trailer onto the truck. After the hook up was completed, the foreman contacted Rauch again and told him Dortch was loaded up and on his way.
The events that follow are in dispute. Dortch claimed that he misunderstood Rauch, believing instead that he had been instructed to deliver the scrap to Duncan's SD Salvage in Dayton. For this reason, he delivered the scrap there and returned the tractor and trailer to Rauch's. Dortch alleged that he advised Rauch when he returned that he had delivered the scrap to SD. An argument ensued and Dortch was ultimately fired.
Conversely, Rauch testified that he never saw Dortch again after he left that morning for NCR. Rauch stated that a little later that morning, he came out to the yard and noticed that the tractor and trailer had returned, much earlier than he had expected. At once, he had an employee check the trailer for the load of scrap, and it was empty. Rauch first attempted to locate Dortch to determine the whereabouts of his scrap metal. When unable to find Dortch, Rauch contacted Cohen to discover if it had been delivered there. It had not.
Immediately, Rauch thought of SD Salvage, knowing that they would be one salvage yard that would accept the load. He testified that they had a reputation of accepting stolen scrap, and therefore would possibly accept a load off of his truck. However, Rauch only knew of SD through reputation, as he had never done business with them. As a matter of fact, he testified that before that day, he had never actually been to their yard.
Subsequently, Rauch drove to SD and found the scrap metal from NCR in their yard. According to Diane Spears, an employee of SD, Dortch told her that Rauch had instructed him to deliver the scrap there. Additionally, she testified that he had requested cash for the load, but she advised she was unable to provide it until the owner returned. Knowing a Rauch truck delivered the scrap, SD relinquished it to Rauch. Thereafter, Rauch contacted the police and a driver to come pick up the scrap metal and deliver it to Cohen. The value of the scrap in this load was $3774.00.
In his appeal, Dortch raises the following assignment of error:
 The trial court erred in overruling appellant's Rule 29 motion for acquittal where the State failed to prove each and every element of the crime charged in the indictment beyond a reasonable doubt thereby violating Appellant's Fifth and Fourteenth Amendment rights to due process of law.
 I
A Crim. R. 29 motion for acquittal may only be granted if the evidence is insufficient to sustain a conviction for the offense charged. State v. Stepp (1997), 117 Ohio App.3d 561, 564. The Supreme Court has held, "[p]ursuant to Crim. R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus. In reviewing the decision, an appellate court must construe the evidence in favor of the State. Stepp, supra.
Dortch was indicted for and convicted in this case of theft as defined in R.C. 2913.02(A)(1), which provides:
 No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 (1) Without the consent of the owner or person authorized to give consent.
Dortch argues that he was misindicted under this particular provision of the statute. He suggests that he would more properly have been indicted under 2913.02(A)(2), which provides:
 No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent.
The parties have each cited a case on point attempting to distinguish these two sections of the theft statute. In State v.Burrows, cited by Dortch, the Eighth District held that a bookkeeper, who was authorized by her employer to obtain or exert control over relevant cash transactions, could not be convicted for theft under R.C. 2913.02(A)(1). (1992), 80 Ohio App.3d 404. Burrows was a bookkeeper for an apartment management company and had responsibility to receive and process cash on a regular basis. She would receive the cash from the property managers, note the amount in her ledger and mark the payment in the "monthly deposit record listing." Thereafter, she would pass the money along to the vice-president or office manager, along with a deposit slip indicating the amount. It was then either the vice-president or office manager's responsibility to actually deposit the money into the bank. The vice-president eventually noticed some discrepancies between the monthly deposit record listing and the bookkeeper's ledger for over $12,000. Id.
The Burrows court found that all of the testimony and evidence at trial demonstrated that appellant was authorized to obtain or exert control over the relevant cash transactions. Accordingly, she could not be convicted under R.C. 2913.02(A)(1), but could arguably have violated R.C. 2913.02(A)(2). Nevertheless, the court pointed out its decision must be based on the crime for which Appellant was indicted, tried and convicted.Id. at 408.
Conversely, the State relies on State v. Isom, in which the Eighth District found a cashier could be convicted of theft under R.C. 2913.02(A)(1). (June 5, 1997), Cuyahoga App. No. 70784, unreported. Isom was a cashier for an auto parts store in her last week of employment. In her position, she received money from customers and placed it into the register. Throughout the day, any amount over $400 was transferred into a separate drop box in the register. At the end of her shift, Isom asked a manager to unlock the vault containing a second vault which held the money. Isom had a key to the second vault. Id.
Once her cash drawer and drop box were removed from her register, Isom went into a small room called the cash office to count the money. This room remained locked. Subsequently, she called to the manager to check her out, which included checking the cash amount against the computer readout on the register. The manager discovered approximately a $428 discrepancy. The manager later located roughly the same amount of cash in a toilet paper roll in the restroom immediately after Isom left the restroom.Id.
Isom was also charged with theft under R.C. 2913.02(A)(1). The Isom court held that the appellant had a limited task of collecting money from the customers, placing it in the register or drop box, and then counting it at the end of her shift. The court found that Isom had much less authority over the stolen property than the appellant did in Burrows. Accordingly, the Eighth District held in this case that Isom could be convicted of theft under R.C. 2913.02(A)(1). Id.
We fail to see the distinction between these cases. Each case involved an employee whose responsibilities included temporarily handling cash and then passing it on to another person. Both Burrows and Isom lawfully obtained possession of the cash in those cases. When they converted it to their own use, they went beyond the scope of consent to lawfully possess the cash. Conversely, the State would argue that the moment the cash went into their pockets, they knowingly exerted control over the cash against the owner's consent, consistent with R.C.2913.02(A)(1). If this were true, there would never be a situation where a person could only be charged with R.C.2913.02(A)(2).
We agree with the First District's holding that these two provisions of the statute are separate crimes requiring proof of different elements. State v. Woody (1986), 29 Ohio App.3d 364,365. More specifically, the provision that is violated depends on whether the individual ever had consent to control the property. Once a person lawfully has control over property with consent, that person cannnot thereafter exert control for a different purpose. That person already has control. Instead, what changes is whether or not the individual within the scope of the consent. If the individual begins to use the property for something outside what the owner specifically authorized, the individual has gone beyond the owner's consent. The statute allows for this precise situation in R.C. 2913.02(A)(2).
The Committee Comment to 2913.02 states:
 The section expands upon the common law requirement that the taking of property must occur simultaneously with a purpose to deprive the owner of the property. Formerly, a wrongful conversion or embezzlement could not constitute larceny, since the intent to deprive was formed after the property came into the offender's possession. Berry v. State, 31 Ohio St. 219
(1877); Porter v. State, 8 Ohio App. 231 (Scioto Co.App., 1917). Under the new section, the basic elements of the offense must still coincide, but conversion or embezzlement now constitutes theft, since the section defines theft as exerting control (as opposed to initially gaining control over property or services) beyond the scope of the owner's consent, and with purpose to deprive the owner of the same. (Emphasis added.)
See State v. Metheney (1993), 87 Ohio App.3d 562, 569. Ostensibly, the purpose of R.C. 2913.02(A)(2) was to codify common law embezzlement in the theft statute. "Embezzle" is defined as "willfully to take, or convert to one's own use, another's money or property, of which the wrongdoer acquired possession lawfully, by reason of some office or employment or position of trust." Black's Law Dictionary (6th ed. Rev. 1990) 522. This definition is clearly illustrated by Burrows, Isom, and the case sub judice.
Dortch was instructed by Rauch, the owner, to pick up the scrap metal from NCR and deliver it to Cohen. Dortch had Rauch's consent to obtain possession of the scrap metal when he picked it up from NCR. The scope of this consent was for Dortch to pick up the scrap from NCR and deliver it straight to Cohen. When Dortch instead headed for SD, he exceeded the scope of Rauch's consent to possess the scrap metal. This is the classic case of embezzlement. Therefore, he would arguably be in violation of R.C. 2913.02(A)(2). However, we can only consider the crime for which Dortch was indicted, tried and convicted. State v. McGee
(1996), 113 Ohio App.3d 208, 211. Since Dortch already had control of the scrap with Rauch's consent, he could not later exert control without consent.
Based on the foregoing discussion, we find that there was not sufficient evidence to support Appellant's conviction under R.C.2913.02(A)(1). Accordingly, the trial court erred in overruling Appellant's Rule 29 motion for acquittal. Judgment reversed and remanded to the trial court with instructions to dismiss the charge against Appellant.
GRADY, P.J., AND YOUNG, J., concur.
Copies mailed to:
Johnna M. Shia
Michael G. Weller
Hon. Barbara P. Gorman