OPINION
{¶ 1} David L. Martin appeals from the trial court's judgment entered on a jury verdict convicting him of two counts of theft of drugs in violation of R.C. 2913.02(A)(1) and two counts of illegal processing of drug documents in violation of R.C. 2925.23(A). We affirm in part and reverse in part.
 {¶ 2} Appellant was a delivery driver for Quick Silver, a pharmaceutical delivery service. In April 2002, Larry Clark ("Clark") a pharmacist at NCS Pharmacy ("NCS") in Eastlake, Ohio, notified James Snyder ("Snyder") of the Lake County Narcotics Agency that fifty tablets of Oxycodone were missing from a shipment that had been delivered to Salida Woods Nursing Home ("Salida Woods") in Mentor, Ohio, on April 19, 2002. Snyder began an investigation. He interviewed Jessica Brown ("Brown") a nurse's aid at Salida Woods who had supposedly signed for the drugs. Snyder obtained documents purportedly bearing Brown's signature acknowledging delivery of the drugs.
 {¶ 3} Clark subsequently informed Snyder that sixty Hydrocodone tablets were missing from a shipment delivered to the Inn Madison in Madison, Ohio, on May 7, 2002. Clark also notified Snyder of a prescription for Diazepam that was missing from a shipment delivered to a nursing home facility in Youngstown, Ohio on May 10, 2002. Snyder interviewed employees of these facilities and obtained documents relating to the purported drug deliveries.
 {¶ 4} Snyder conducted his investigation and discovered appellant was the delivery driver for all three shipments. Snyder concluded appellant had taken the drugs and forged signatures on records of the drug deliveries.[1] Appellant then returned these records to NCS.
 {¶ 5} Appellant was indicted on six counts: counts 1, 2, and 3 for theft of drugs in violation of R.C. 2913.02(A)(1), felonies of the fourth degree; count 4, illegal processing of drug documents, a fourth degree felony in violation of R.C. 2925.23(A); and counts 5 and 6, illegal processing of drug documents, fifth degree felonies in violation of R.C.2925.23(A). Counts 1 and 4 pertained to the Oxycodone prescription for Salida Woods; counts 2 and 5 pertained to the Hydrocodone prescription for Inn Madison; and counts 3 and 6 pertained to the Diazepam prescription for the Youngstown facility.
 {¶ 6} The matter was tried to a jury. Appellant was convicted of counts 1, 2, 4, and 5, and acquitted of counts 3 and 6.[2] The trial court sentenced appellant to two years of community control including 120 days of jail time, 200 hours of community service, and a requirement that appellant attend three AA/NA meetings per week. Appellant also received a mandatory six months driver's license suspension. Appellant appeals from his convictions asserting five assignments of error:
 {¶ 7} "[1.] The [t]rial [c]ourt erred to the prejudice of [a]ppellant when it overruled [a]ppellant's [m]otion for [a]cquittal; to wit, the evidence adduced at trial was insufficient to support the convictions."
 {¶ 8} "[2.] The [t]rial [c]ourt erred to the prejudice of [a]ppellant when it overruled [a]ppellant's [m]otion for [a]cquittal; to wit, the evidence adduced at trial was insufficient to establish venue."
 {¶ 9} "[3.] Appellant's convictions are against the [m]anifest [w]eight of the evidence."
 {¶ 10} "[4.] The [t]rial [c]ourt erred to the [p]rejudice of [a]ppellant when it overruled [a]ppellant's [m]otion for [s]everance of [o]ffenses for [t]rial."
 {¶ 11} "[5.] The [t]rial [c]ourt erred to the prejudice of [a]ppellant when it overruled [a]ppellant's motion for a [n]ew [t]rial."
 {¶ 12} Appellant's first and second assignments of error challenge the trial court's denial of his motions for acquittal; therefore we address these assignments of error together.
 {¶ 13} "A sufficiency argument tests whether the state has presented evidence on each element of the offense." State v. Driesbaugh,
2002-P-0017, 2003-Ohio-3866, at ¶ 36, citing State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at 13.
 {¶ 14} "We must determine whether, viewing the probative evidence and inferences drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found proof of each element of the offense beyond a reasonable doubt. This presents a question of law and the court is not permitted to weigh the evidence." (Internal citations omitted.) Id. at ¶ 37.
 {¶ 15} Appellant first contends there was insufficient evidence to support his convictions for theft of drugs in violation of R.C.2913.02(A)(1). We agree.
 {¶ 16} R.C. 2913.02(A) provides:
 {¶ 17} "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 {¶ 18} "(1) Without the consent of the owner or person authorized to give consent."
 {¶ 19} Appellant contends he was improperly indicted under this particular provision and should have been indicted under R.C. 2913.02(A)(2), which provides:
 {¶ 20} "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 {¶ 21} "* * *
 {¶ 22} "(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent."
 {¶ 23} The state, relying on State v. Isom (June 5, 1997), 8th Dist. No. 70784, 1997 Ohio App. LEXIS 2444, argues that although appellant had some limited authority over the drugs, he exerted or obtained control over the drugs in violation of R.C. 2913.02(A)(1) when he did not deliver them. In Isom, the Eighth District held that a store clerk could be convicted under R.C. 2913.02(A)(1), where she took money she was supposed to place in her register. The state contends:
 {¶ 24} "Appellant had a very limited authority over the prescription drugs in question. Specifically, NCS Pharmacy entrusted the narcotics to appellant, a simple delivery driver, under the strict condition and express limitation that he deliver the narcotics to the appropriate assisted living or nursing home, obtain the authorized signatures acknowledging the receipt of the narcotics, and then deliver those receipts back to NCS Pharmacy. The evidence clearly demonstrated that NCS Pharmacy did not give consent to appellant to obtain or exert control over the prescription drugs for any other purpose other than their mere delivery to the intended recipients. Consequently, when appellant stole the prescription drugs by pocketing said drugs instead of delivering them * * * he was obtaining or exerting control over the drugs without the consent of NCS Pharmacy, the owner of the property in question."
 {¶ 25} The state's argument is nonsensical and in no ways supports the conclusion that there was sufficient evidence for the R.C. 2913.02(A)(1) charges to survive appellant's motion for acquittal. In fact, the state's argument sets forth exactly why appellant should have been indicted under R.C. 2913.02(A)(2), i.e., appellant had some limited control over the drugs with the consent of NCS and then exceeded the scope of that consent.
 {¶ 26} We find the reasoning set forth in State v. Dortch (Oct. 15, 1999), 2nd Dist. No. 17700, 1999 Ohio App. LEXIS 4838, persuasive. There, the defendant, a delivery driver, was charged with theft under R.C. 2913.02(A)(1) when he failed to deliver a load of scrap to the facility designated by his employer, and instead, delivered the scrap to a different facility and obtained money for it. On appeal, the appellant argued he could not be convicted under R.C. 2913.02(A)(1) because he rightfully had some control over the scrap. The appellant cited State v.Burrows (1992), 80 Ohio App.3d 404 in support of his argument. Burrows
involved a bookkeeper who was embezzling money from her employer. As in the instant case, the state relied on Isom in support of its argument.
 {¶ 27} The Dortch court found no distinction between the cases.Dortch, supra, at 9. The court found both cases involved employees temporarily handling cash and then passing it on to others. Id. Both employees lawfully obtained possession of the cash but went beyond the scope of consent when they converted it to their own use. Id.
 {¶ 28} As here, the state in Dortch argued that "the moment the cash went into their pockets, they knowingly exerted control over the cash against the owner's consent, consistent with R.C. 2913.02(A)(1)." (Emphasis sic.) Id. at 9-10. The Second District flatly rejected this argument noting, "[I]f this were true, there would never be a situation where a person could only be charged with R.C. 2913.02(A)(2)." Id. at 10.
 {¶ 29} The court then held:
 {¶ 30} "* * * the provision that is violated depends on whether the individual ever had consent to control the property. Once a person lawfully has control over property with consent, that person cannot thereafter exert control for a different purpose. That person already has control. Instead, what changes is whether or not the individual [acts] within the scope of the consent. If the individual begins to use the property for something outside what the owner specifically authorized, the individual has gone beyond the owner's consent. The statute allows for this precise situation in R.C. 2913.02(A)(2)." (Emphasis sic.) Id.
 {¶ 31} Here, as in Dortch, appellant had consent to control the property. While NCS maintained ownership, appellant had control of the drugs for purposes of delivery. He then exceeded the scope of his authority when he converted the drugs to his own use. Thus, appellant was improperly indicted under R.C. 2913.02(A)(1), and the trial court erred in denying appellant's motion for acquittal on these charges. Accord,State v. Hammerschmidt (March 8, 2000), 9th Dist. No. 2987-M, 2000 Ohio App. LEXIS 838, affirming conviction under R.C. 2913.02(A)(2) of a nurse-employee of a rehabilitation center who stole drugs under his control.
 {¶ 32} The state also points out appellant does not contend that he did not steal the drugs, but only that he was indicted under the wrong section of the statute. The state then seems to argue that we should affirm appellant's conviction because, as long as he was guilty of something, it should not matter that appellant was improperly indicted.[3] This argument demonstrates a fundamental and troubling misunderstanding of the criminal justice process. It is the state's burden to properly indict a defendant and then to prove each element of the indicted offense beyond a reasonable doubt. The defendant has no obligation to proclaim his innocence as that innocence is presumed.
 {¶ 33} Here, the state failed to present sufficient evidence to survive appellant's motion for acquittal on the R.C. 2913.02(A)(1) charges, we will not affirm appellant's conviction merely because the facts arguably support another charge. See, Dortch, supra at 10, stating "* * * these two provisions [R.C. 2913.02(A)(1) and (A)(2)] are separate crimes requiring proof of different elements."
 {¶ 34} Appellant next argues there was insufficient evidence to support his conviction under R.C. 2925.23(A). We disagree.
 {¶ 35} R.C. 2925.23 provides in pertinent part:
 {¶ 36} "(A) No person shall knowingly make a false statement in any prescription, order, report, or record required by Chapter 3719. of the Revised Code.
 {¶ 37} (B) No person shall intentionally make, utter, or sell, or knowingly possess a false or forged:
 {¶ 38} "(1) Prescription;
 {¶ 39} "(2) Uncompleted preprinted prescription blank used for writing a prescription;
 {¶ 40} "(3) Official written order;
 {¶ 41} "(4) License for a terminal distributor of dangerous drugs as required in section 4729.60 of the Revised Code;
 {¶ 42} "(5) Registration certificate for a wholesale distributor of dangerous drugs as required in section 4729.60 of the Revised Code."
 {¶ 43} Appellant contends the state failed to present sufficient evidence to establish he made a false statement as required by R.C.2925.23(A). Appellant argues that, if anything, the state may have shown a violation of R.C. 2925.23(B), a crime for which he was not indicted.
 {¶ 44} In support of his argument, appellant points to the testimony of the state's handwriting expert, Andrew Szymanski ("Szymanski") who testified the purported signatures on the documents were tracings of an original signature. Appellant also points to Szymanski's testimony that he was not able to identify appellant as the person who made the tracings.
 {¶ 45} First, Szymanksi testified he could not identify the tracing as having been made by appellant because it was a tracing, rather than a free-hand signature; in other words, the signature did not contain identifiable handwriting characteristics because it was a tracing of someone else's handwriting.
 {¶ 46} Second, the state presented sufficient evidence to overcome appellant's motion for acquittal on the R.C. 2925.23(A) charges. The state presented evidence that appellant was in possession of the drug documents and he returned them to NCS. The state also presented evidence from those who had purportedly signed for the drugs. These persons testified the signatures were not genuine. The state also presented the expert testimony of Szymanski. He concluded the signatures in question were traced. Thus, the false statement element of R.C. 2925.23(A) was satisfied viz., appellant's implicit representation that the signatures on the documents were genuine when they were not. This evidence, viewed in the light most favorable to the prosecution was sufficient to overcome appellant's motion for acquittal on the charges of illegal processing of drug documents under R.C. 2925.23(A).
 {¶ 47} Appellant also argues the trial court erred in denying his motion for acquittal where the state failed to present evidence to establish venue. We disagree.
 {¶ 48} R.C. 2901.12(A) provides: "The trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and in the territory of which the offense or any element of the offense was committed."
 {¶ 49} Although not a material element of the offense charged, venue must be proved in criminal prosecutions unless waived by the defendant.State v. Headley (1983), 6 Ohio St.3d 475, 477, citing State v. Draggo
(1981), 65 Ohio St.2d 88, 90. "The standard of proof is beyond a reasonable doubt, although venue need not be proved in express terms so long as it is established by all the facts and circumstances in the case." Id., citing State v. Dickerson (1907), 77 Ohio St. 34, paragraph one of the syllabus.
 {¶ 50} Because we have determined the trial court erred in denying appellant's motion for acquittal on the theft of drug charges, we need not address appellant's venue argument with respect to those charges. With respect to the charges of illegal processing of drug documents, we conclude the state did present sufficient evidence to establish that an element of those offenses was committed in Lake County.
 {¶ 51} The state presented evidence that NCS was located in Lake County. R.C. 2925.23(A) states that "No person shall knowingly make a false statement in any prescription, order, report or record required by Chapter 3719. or 4729 of the Revised Code. Here, appellant made a false statement when he returned the forms with the traced signatures to NCS in Lake County, i.e., he implicitly represented to NCS that the signatures where genuine when in fact they were not. Appellant's second assignment of error is moot with respect to the charges under R.C. 2913.02(A)(1) and without merit with respect to the charges under R.C. 2925.23(A).
 {¶ 52} In his third assignment of error, appellant argues his convictions are against the manifest weight of the evidence. Our disposition of appellant's first assignment of error renders this assignment of error moot with respect to appellant's convictions under R.C. 2913.02(A)(1). With respect to appellant's convictions under R.C. 2925.23(A), appellant's argument lacks merit.
 {¶ 53} We may find that a verdict is against the manifest weight of the evidence even though legally sufficient evidence supports it. Statev. Group, 98 Ohio St.3d 248, 2002-Ohio-7247, at ¶ 76. When we consider a manifest weight argument, we review the entire record, weigh the evidence and reasonable inferences, and consider the credibility of witnesses. Id. at ¶ 77. We then determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial. Id. We should only exercise this discretionary power in those exceptional cases where the evidence weighs heavily against conviction. Id. See, also, State v. Thompkins (1997), 78 Ohio St.3d 380,387.
 {¶ 54} As discussed above the state presented evidence that appellant was in possession of the drug documents and he returned them to NCS. The state also presented evidence from those who had purportedly signed for the drugs. These persons testified the signatures were not genuine. The state also presented the expert testimony of Szymanski. He concluded the signatures in question were traced. Thus, the false statement element of R.C. 2925.23(A) was satisfied viz., appellant's implicit representation that the signatures on the documents were genuine when they were not.
 {¶ 55} Further, the state presented evidence that NCS was located in Lake County. Here, appellant made a false statement when he returned the forms with the traced signatures to NCS in Lake County, i.e., he implicitly represented to NCS that the signatures where genuine when in fact they were not. Thus, we cannot say appellant's convictions under R.C. 2925.23(A) are against the manifest weight of the evidence. Appellant's third assignment of error is without merit.
 {¶ 56} Appellant's fourth assignment of error challenges the trial court denial of his motion to sever. Appellant moved to sever the counts for trial based on the date of the offenses, i.e., appellant moved that counts 1 and 4 be tried together, counts 2 and 5 be tried together, and that counts 3 and 6 be tried together. The trial court denied appellant's motion and all six counts were tried jointly. We find no error.
 {¶ 57} Crim.R. 8 permits the joinder of offenses in an indictment "* * * if the offenses * * * are of the same or similar character, * * *, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct."
 {¶ 58} The six counts indicted in the instant case are parts of a common scheme or plan or part of a course of criminal conduct. Therefore, they were properly joined in the same indictment.
 {¶ 59} Crim.R. 14 permits a trial court to sever properly joined offenses upon a showing that joint trial of the offenses will prejudice the defendant.
 {¶ 60} In State v. Schaim, 65 Ohio St.3d 51, 1992-Ohio-31, the Ohio Supreme Court set forth a three part test we are to apply in determining whether the trial court erred in denying appellant's motion to sever. To prevail on his argument appellant must show:
 {¶ 61} "* * * (1) that his rights were prejudiced, (2) that at the time of the motion to sever he provided the trial court with sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial, and (3) that given the information provided to the court, it abused its discretion in refusing to separate the charges for trial." Id. at 59, citing State v. Torres
(1981), 66 Ohio St.2d 340.
 {¶ 62} In determining whether joinder of the counts for trial prejudiced appellant, we must determine "* * * (1) whether evidence of the other crimes would be admissible even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct." Id. "If the evidence of other crimes would be admissible at separate trials, any `prejudice that might result from the jury's hearing the evidence of the other crime[s] in a joint trial would be no different from that possible in separate trials,' and a court need not inquire further." Id., quoting Drew v. United States (C.A.D.C. 1964), 331 F.2d 85, 90.
 {¶ 63} Here, appellant argues that evidence of the other crimes would not have been admissible and that evidence of each crime was not simple and distinct.
 {¶ 64} Evid.R. 404(B) provides:
 {¶ 65} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 66} In the instant case, evidence of the other crimes would have been admissible for the limited purpose of establishing appellant's opportunity or plan. Further, evidence of the other crimes was separate and distinct. The acts occurred on three different dates, involved three different health care providers, and three different drugs. While some witnesses were common to each crime, the evidence of each was still separate and distinct. Also, the jury acquitted appellant of counts 3 and 6. This demonstrates joinder of the counts did not mislead the jury. See, State v. Larry, 5th Dist. No. 02-CA-56, 2003-Ohio-2747, at ¶ 10, stating, "In the instant case, the jury found appellant guilty of one of the trafficking charges, but not guilty of the other. From this fact, we may conclude that the jury correctly followed the court's instruction to consider each count separately."
 {¶ 67} The trial court did not abuse its discretion in denying appellant's motion to sever. Appellant's fourth assignment of error is without merit.
 {¶ 68} In his fifth assignment of error, appellant argues the trial court erred in denying his motion for a new trial. As grounds for a new trial, appellant cited the trial court's denial of his motion to sever. Because we have determined that the trial court did not abuse its discretion in denying appellant's motion to sever, appellant's fifth assignment of error is without merit.
 {¶ 69} For the foregoing reasons the judgment of the Lake County Court of Common Pleas is affirmed with respect to counts 4 and 5 (illegal processing of drug documents) and reversed with respect to counts 1 and 2 (theft of drugs) and this matter is remanded to the trial court for proceedings consistent with this opinion.
Christley, J., O'Neill, J., concur.
[1] A representative of each facility receiving a drug shipment signed several documents. Some were specific to each prescription; other pertained to the entire shipment. Apparently, appellant would have a representative sign a document and then trace that signature onto other documents.
[2] Counts 3 and 6 involved the drugs purportedly delivered to the Youngstown facility.
[3] The state's brief states:
"In the appeal at bar, appellant is not arguing that he did not steal the prescription drugs in question * * *. Indeed, appellant does not even attempt to argue before this Court that he did not steal the missing oxycodone * * * and the missing hydrocodone * * *. Rather, appellant's sole argument as to why his motion for acquittal pursuant to Crim.R. 29 should have been granted is that he was supposedly improperly indicted under the relevant statutes given the criminal conduct in which he engaged in the instant matter."