OPINION
Appellant, Richard Campbell ("Campbell"), appeals from the judgment of the Lake County Court of Common Pleas, finding him guilty of three counts of unlawful sexual conduct with a minor, third degree felonies, in violation of R.C. 2907.04(A).
On March 24, 2003, Campbell was indicted on two counts of attempted gross sexual imposition, fifth degree felonies, in violation of R.C. 2927.05(A)(1), and three counts of unlawful sexual conduct with a minor, third degree felonies, in violation of R.C. 2907.04(A), with specifications that Campbell was ten or more years older than the victims. The incidents occurred at the home of Campbell in the Western Reserve Trailer Park ("Park"), and involved three victims, who were all minors at the time.
The indictment specified that counts one and two, attempted gross sexual imposition, involving Victim I, and count five of unlawful sexual conduct with a minor, involving Victim II, occurred during August 2002. Counts three and four of the indictment charging unlawful sexual conduct with Victim III, happened sometime between August 15, 2002 to September 2002. Campbell entered a plea of not guilty to all charges.
Following his indictment, Campbell entered a plea of not guilty to all charges. Campbell filed a motion to sever the offenses on May 13, 2003, which was renewed again later in the proceedings. The trial court denied all motions.
Testimony at trial revealed the following. Victim I was not a resident of the Park. She was thirteen years old at the time of the incident. During the summer of 2002, she spent a lot of time visiting with Victim II and Victim III. Victim I testified that one day in August 2002, Campbell agreed to pick her up and bring her back to the park for the weekend. Upon arriving at Campbell's trailer, Victim I testified that she refused his request to have sex with her. She testified that Campbell grabbed her shoulder, touched her breast and private area, and attempted to unbutton her pants. Victim I stated that she avoided his advances by pushing him away and then she left his trailer.
Victim II was fourteen years old at the time of the incident and resided in the Park. She testified that after knowing Campbell for a period of one year, she considered Campbell to be her "best friend." She testified that she and Campbell had "very personal, private conversations," and that she would confide in Campbell. Victim II testified that Campbell told her "if I had sex it would trigger my hormones and make me start my period." Victim II testified that Campbell performed oral sex on her and they further engaged in vaginal intercourse.
Victim III, also a resident of the Park, was thirteen at the time of her sexual encounter with Campbell. She testified that she had known Campbell for about six years. Victim III would baby-sit his two minor children, and go places with him. One evening in August 2002, Victim III, and her friend Corrine, talked with Campbell about going out to "shoot pool." She testified that Campbell called her mother and received permission to take her roller skating with his children. However, Victim III testified that Campbell's children were not really staying with him on that night. The three proceeded to go out to a local pool hall. Victim III testified that while at the hall, the three made a bet. She stated the nature of the bet was "if Campbell won three games he would get to have sex with us and buy us beer and if we won the three games, then he'd buy beer."
Campbell proceeded to win three games, purchased beer and cigarettes for the two girls, and permitted them to drink beer in the car on the way back to his trailer. Victim III testified that Campbell told her that "he was going to have sex with me first." After returning to Campbell's trailer, Victim III and Corrine consumed more beer, and Victim III proceeded to have vaginal intercourse with Campbell. Victim III did not go home that night, instead she stayed at Campbell's trailer and slept on the floor next to him. The next morning Victim III's father, arrived at Campbell's looking for Victim III because she had not come home the night before. She testified that she overheard Campbell explain to her father that they were at the hospital all night because Campbell's daughter hurt her knee skating. This testimony was corroborated by Victim III's father, who further testified that he did not see Campbell's children on that morning.
On October 1, 2002, Campbell's ex-wife, Therese, contacted the Madison Township Police Department, and expressed concerns of anonymous complaints that she had received regarding thirteen and fourteen year old girls hanging out at Campbell's trailer. Upon investigation, with the help of the middle school superintendent, Madison Township Police Officer Ralf Caswell ("Caswell"), a school resource police officer, came up with the names of Victim II and Victim III. On October 2, 2002, Caswell, conducted an interview with both Victims II and III. They denied any inappropriate sexual activity with Campbell, but suggested that he contact Victim I. As a result, Victim I was brought to the Police Department by her mother and provided both a verbal and written statement of her sexual encounter with Campbell.
Subsequently, Victim II and Victim III spoke with Victim I's Aunt, Holly Maraessa ("Holly"), a resident of the Park, and friend of the victims. At trial, Holly testified that both Victim II and Victim III told her about their sexual encounters with Campbell, and she advised both victims that they shouldn't have lied to Caswell and encouraged them to tell the truth. Holly then went to the police department to report her concerns about Campbell and the victims.
On October 11, 2002, Victim II and Victim III went to school, and decided to tell the truth about their sexual encounters with Campbell. Caswell was contacted. Caswell called in Detective Mark Parisi ("Parisi") to interview both Victims II and III. Written statements were provided by the girls of their sexual activities with Campbell.
At the same time that they were giving their statements, Campbell telephoned the police department and spoke with Sergeant Matthew Byers ("Byers"). Byers testified that Campbell stated that he "believed that young girls from the trailer park were making allegations about him," and he advised Byers to contact a fifteen year old girl named Dar, because she was with Campbell during the time of any alleged incidents. However, at trial, Dar testified that that she was not with Campbell during any of the incidents for which he was charged.
Following the state's case-in-chief, appellant moved for acquittal pursuant to Crim.R. 29(A). The trial court granted his motion as to count one of the indictment, attempted gross sexual imposition, of Victim I. Campbell renewed his motion as to the remaining charges at the close of trial, and the trial court overruled it. On April 8, 2004, the jury found Campbell guilty of the three unlawful sexual conduct with a minor charges with the specifications that Campbell was ten or more years older than the victims. The jury returned a not guilty verdict as to count two, attempted gross sexual imposition of Victim I.
On June 21, 2004, the court conducted a sentencing hearing. Campbell was sentenced to a three-year prison term on each of the convictions. These sentences were ordered to be served concurrently. Further, the court classified Campbell a sexually oriented offender, and imposed a fine of $7,500.
It is from this judgment that appellant filed a timely notice of appeal and presents the following assignments of error:
"[1.] The trial court violated appellant's rights to due process of law under the fourteenth amendment of the U.S. Constitution and Sections 10
and 16, Article 1 of the Ohio Constitution when it denied defendant-appellant's motion for severance of offenses for trial.
"[2] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest of weight of the evidence.
"[3] The trial court erred to the prejudice of the defendant-appellant in denying his motion for acquittal made pursuant to Crim.R. 29.
"[4.] The trial court erred when it sentenced the defendant-appellant to more than the `statutory maximum' sentence based upon a finding of factors not found by the jury or admitted by the defendant-appellant in violation of the defendant-appellant's state and federal constitutional rights to trial by jury."
Campbell's first assignment of error challenges the trial court's denial of his motion to sever. Campbell moved to sever the counts for trial based on the identity of the victims of the alleged the offenses, i.e., Campbell moved that counts one and two be tried together, counts three and four be tried together, and that count five be tried individually. The trial court denied Campbell's motion and all five counts were tried jointly.
The law favors joinder of multiple offenses and such joinder is liberally permitted if the offenses are of the same or similar character. Crim.R. 8(A); State v. Schaim (1992), 65 Ohio St.3d 51, 58. In the present case, the charges against Campbell concerned similar instances of sexual misconduct. Therefore, they were properly joined in the same indictment.
Where joinder is otherwise proper, Crim.R. 14 requires the accused to demonstrate that he is somehow prejudiced in order to obtain severance. In Schaim, the Ohio Supreme Court set forth a three part test we are to apply in determining whether the trial court erred in denying appellant's motion to sever. To prevail on his argument appellant must show:
"* * * (1) that his rights were prejudiced, (2) that at the time of the motion to sever he provided the trial court with sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial, and (3) that given the information provided to the court, it abused its discretion in refusing to separate the charges for trial." Id. at 59, citing State v. Torres (1981),66 Ohio St.2d 340.
When a defendant claims that he or she was prejudiced by the joinder of multiple offenses, the court must determine "* * * (1) whether evidence of the other crimes would be admissible even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct." Id. "If the evidence of other crimes would be admissible at separate trials, any `prejudice that might result from the jury's hearing the evidence of the other crimes in a joint trial would be no different from that possible in separate trials,' and a court need not inquire further." Id., quoting Drew v. United States (C.A.D.C. 1964), 331 F. 2nd 85.
Under the second part of the joinder test, when simple and direct evidence exists, an accused is not prejudiced by joinder regardless of the nonadmissibility of evidence of these crimes as other acts under Evid.R. 404(B). * * *" (Citations omitted.) State v. Lott (1990),51 Ohio St. 3d 160, 163.
Here, appellant argues that evidence of the other crimes would not have been admissible if the crimes had been tried separately, and that evidence of each crime was not simple and distinct.
We first address the extent to which evidence of each of these crimes would be admissible in the other trials if the counts were severed as requested by Campbell.
In Schaim, the Ohio Supreme Court discussed the admissibility of other acts evidence in certain sexual offenses and stated: "The admissibility of other acts evidence is carefully limited because of the substantial danger that the jury will convict the defendant solely because it assumes that the defendant has a propensity to commit criminal acts, or deserves punishment regardless of whether he or she committed the crime charged in the indictment. * * * The legislature has recognized the problems raised by the admission of other acts evidence in prosecutions for sexual offenses, and has carefully limited the circumstances in which evidence of the defendant's other sexual activity is admissible." Id. at 59.
In the case sub judice, Campbell was charged with two counts of attempted gross sexual imposition as to Victim I, pursuant to R.C.2907.05(A)(1) and R.C. 2923.02.
The gross sexual imposition statute contains a subsection that addresses the admissibility of evidence of other sexual activity by either the victim or the defendant.
R.C. 2907.05(D) provides in relevant part: "[E]vidence of specific instances of the defendant's sexual activity, opinion evidence of the defendant's sexual activity, and reputation evidence of the defendant's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, the defendant's past sexual activity with the victim, or is admissible against the defendant under section 2945.59 of the Revised Code, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."
R.C. 2945.59 provides that: "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."
The admission of "other acts" testimony in criminal cases is governed by Evid.R. 404(B), which provides:
"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Although the admissibility of specific instances of an accused's sexual conduct is limited by Evid.R. 404(B) and R.C. 2907.05(D), such evidence is admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or the absence of mistake or accident where the acts at issue are closely related in nature, time, and place to the offense charged. State v.Strobel (1988), 51 Ohio App.3d 31, 37; State v. Wyatt (Jan. 10, 1994), 12th Dist. No. CA 93-03-050, 1994 Ohio App. LEXIS 17, at 13.
In the case sub judice, it is clear that the testimony of the other victims as to their alleged sexual conduct with Campbell would not be admissible in separate trials. Any of the other victim's testimony would not be admissible to prove the charges that he committed the sexual crimes against another victim. What happened between Campbell and any of the other two victims is not relevant to the charge involving one of the other victims. The issue in all of the charges in this case, was the credibility of each individual victim. Identity was not an issue because, if the victim was telling the truth, there was no question that Campbell was the perpetrator. None of the other exceptions of 404(B) apply. Thus, the joinder of the five charges allowed the jury to hear evidence of other acts that would not have been admissible at separate trials.
However, we must next address the second part of the joinder test to determine whether Campbell was prejudiced. If the evidence of each crime is simple and distinct, the jury is presumed to have been able to segregate the evidence. Schaim, at 62, citing State v. Roberts (1980),62 Ohio St.2d 170.
The evidence in this case was simple and distinct. The facts of each alleged crime were separate and easy to understand. The crimes involved different victims, different facts, and occurred at different times.
Counts one and two involved alleged sexual conduct with Victim I. Counts three and four involved sexual conduct with Victim II, and count five involved a separate incident of sexual conduct with Victim III. At trial, all three of the minor victims testified, describing their separate sexual encounters with Campbell. In its jury instructions, the trial court also cautioned the jury to consider each count and the evidence applicable to each count separately. Strobel, at 32, (joinder of multiple counts of gross sexual imposition, involving different victims, permissible); State v. Jones (Sept. 20, 1993), 12th Dist. No. CA 92-12-117, 1993 Ohio App. LEXIS 4469, (finding joinder of multiple sexual offenses, involving four different victims, permissible). Further, the jury acquitted appellant of count two. This demonstrates joinder of the counts did not mislead the jury. State v. Martin, 11th Dist. No. 2003-L-143, 2005-Ohio-688, at ¶ 66; State v. Larry, 5th Dist. No. 02-CA-56, 2003 Ohio 2747, at ¶ 10. See, also, State v. Villa, 2nd Dist. No. 18868, 2002-Ohio-2939, at 51.
Therefore, we, find that the trial court did not abuse its discretion in denying Campbell's motion to sever. Campbell's first assignment of error is without merit.
In his second assignment of error, Campbell contends that his three convictions for unlawful sexual conduct with a minor were against the manifest weight of the evidence.
It is well established that the test to determine whether a conviction is against the manifest weight of the evidence is as follows:
"The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983), 20 Ohio App.3d 172, 175; Statev. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at 13-14. The Ohio Supreme Court has accepted the application of this test. State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
In this case, Campbell's argument in support of his manifest weight challenge centers on the credibility of the testimony of Victim II, and Victim III.
It is well-settled under Ohio law that the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the fact. State v. DeHass (1967), 10 Ohio St.2d 230, 231. This is because the trier of fact occupies the best position for observing and assessing the demeanor of the witnesses as they testify. Myers v. Garson
(1993), 66 Ohio St.3d 610, 615; Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80. Thus, a reviewing court will not second-guess such determinations unless it is clear that the trial court, in this case, lost its way and a manifest injustice has occurred. In the case sub judice, the jury was presented with some conflicting testimony. Victim III testified that the incident happened "at the time of the Grape Jamboree," and that Campbell did not "have his kids" that weekend. In contrast, both Joel Lett and Wendy Benson testified that Campbell's children were with him on the weekend of the Grape Jamboree. Campbell also points out that in her testimony, Victim III stated that her friend Corrine, sat by in the living room while she and Campbell had sex on the floor. Campbell asserts that it is unbelievable that Corrine would not have told anyone of the incident, and notes that Corrine was not called as a witness in this case. Caswell testified that Corrine, a former resident of the Park, had moved and the police department was unable to determine her whereabouts.
Further, Campbell's argument that Victim II's statement produced by the police indicated that she claimed to have been the one who had sex with Campbell on the night they had gone to the pool hall is not supported by the record before this court. A review of the transcript indicates that Parisi testified that it was his written report, which noted that Victim II stated she had gone to the pool hall with Campbell. He further testified that his report included a summary of the statements of both Victim II and Victim III, and he may have accidentally attributed the trip to the pool hall to Victim II. In her testimony, Victim II did not testify that her sexual encounter with Campbell occurred on a night when she went to a pool hall with him.
Next, Campbell asserts the testimony of Holly that "in [her] opinion the girls were not telling the truth," impeached the credibility of Victim II and III. However, Holly also testified that in her first report of the matter to the police department she signed a statement that Victims I and II have "never lied to her," and she believed what they had told her about their sexual encounters with Campbell.
We must stress again that the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the fact.State v. DeHass, at 231. Where there exists conflicting testimony, either of which version may be true, we may not choose which view we prefer.State v. Gore (1999), 131 Ohio App.3d 197, 201. Instead, we must accede to the trier of fact, who, "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id., quoting Seasons Coal Co., at 80. Here the jury, as the trier of fact, after seeing and hearing these witnesses, clearly believed the testimony of the Victims. Further, "in cases involving sexual misconduct with a child, the precise times and dates of the alleged offense or offenses often times cannot be determined with specificity." State v.Reinhardt, 10th Dist. No. 04AP-116, 2004-Ohio-6443, at ¶ 20; State v.Daniel (1994), 97 Ohio App.3d 548, 556.
Deferring to the trial court on matters of credibility, we do not find from the record that it created such a manifest miscarriage of justice that the conviction must be reversed. Thompkins, at 387. Thus, Campbell's second assignment of error is without merit.
Under his third assignment of error, Campbell contends that the court committed error by denying his motion for acquittal, under CrimR. 29(A).
The Ohio Supreme Court established the standard for evaluating motions for acquittal in State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus. The Court stated that "if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt," a judgment of acquittal on a Crim.R. 29 motion should not be granted. Id.; see, also, State v.Talley, 11th Dist. No. 97-L-169, 1998 Ohio App. LEXIS 4526.
Campbell was convicted of three counts of unlawful sexual conduct with a minor, in violation of R.C. 2907.04(A), which states:
"(A) No person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard."
"`Sexual conduct' means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another[.]" R.C. 2907.01(A).
Appellant asserts the state failed to provide sufficient evidence showing that he engaged in sexual conduct with Victims II and III. We disagree.
Victim II provided the following testimony on direct examination regarding the events that took place at Campbell's trailer:
"[Victim II]: * * * [H]e stood me up and he kissed me and then he took me to his little girl's room where he told me to take off my pants and lay on the bed.
"* * *
"[State]: Did you do that?
"[Victim II]: Yeah. And he took off his pants he started performing oral sex on me and —
"* * *
"[Victim II]: [He] put his mouth on my vagina.
"[State]: Then what happened?
"[Victim II]: Then he started performing sexual intercourse and his was kissing me at the same time and —
"[State]: * * * What does sexual intercourse mean to you, * * * ?"
"[Victim II]: He stuck his penis in my vagina and a little while past (sic) and I tried saying no but it wouldn't come out because I was so tensed up and finally I told him to stop and he stopped."
Victim III testified as to her sexual encounter with Campbell at his trailer, as follows:
"[Victim III]: We started kissing and we moved to the floor.
"* * *
"[State]: When you got to the floor, what position were you on the floor?
"[Victim III]: On my back.
"[State]: Where was [Campbell]?
"[Victim III]: On top of me.
"* * *
"[Victim III]: He starts kissing me. We started kissing.
"* * *
"[Victim III]: He pulled my pants off.
"* * *
"[Victim III]: We — we started — we were having sex.
"* * *
"[Victim III]: He putting his penis in me. I don't know how to explain. I don't know how to explain.
"[State]: Just explain what part of his body touched your body?
"[Victim III]: His penis.
"[State]: All right, His penis touched what part of your body?
"[Victim III]: The inside of my vagina.
"[State]: Is that what you mean when you say `We had sex.'
"[Victim III]: Yeah."
Through the detailed testimony of the victims the state provided evidence regarding the incidents that, when viewed in a light most favorable to the prosecution, was sufficient for a reasonable person to find appellant guilty of unlawful sexual conduct with a minor. Thus, the trial court did not err by overruling appellant's Crim.R. 29 motion for acquittal. State v. Shannon, 11th Dist. No. 2002-L-124, 2004-Ohio-1662, at ¶ 33. Campbell's third assignment of error is without merit.
Under his final assignment, appellant challenges the propriety of the procedure the trial court followed in determining not to impose the shortest sentence possible upon him.
Campbell was convicted of three counts of unlawful sexual conduct with a minor. The additional finding of the jury was that Campbell was more than ten years older than the victims. Thus, his convictions of unlawful sexual conduct with a minor are third degree felonies. Campbell was sentenced to prison terms of three years on each count with the terms to run concurrently. The prescribed sentencing range for a third degree felony is one to five years. R.C. 2929.14(A)(3). However, R.C. 2929.14(B) provides in pertinent part that "the court shall impose the shortest prison term authorized for the offense * * * unless one or more of the following applies: (1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term. (2) The court finds on the record that the shortest term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."
Citing Blakely v. Washington (2004), 1245 S.Ct. 2531, Campbell submits that his Sixth Amendment right to a jury trial was violated when the trial court made specific factual findings under R.C. 2929.14(B). Campbell contends that since the trial court's findings under the statute resulted in the imposition of a sentence greater than the statutory minimum for third degree felonies, the trial court had a legal duty to submit the relevant factual issues to the jury for determination.
This court has applied the holding in Blakely to the sentencing factors under R.C. 2929.14(B) which allows a trial judge to sentence a defendant to a term longer than the statutory minimum. In State v. Morales, 11th Dist. No. 2003-L-025, 2004-Ohio-7239, we noted that Blakely and the prior case law of the United States Supreme Court did not have the effect of depriving a trial judge of the discretion to consider aggravating circumstances in deciding the length of a defendant's sentence. Instead, the Blakely decision only held that a trial judge cannot make a factual finding which would result in the imposition of a sentence longer than the maximum prison term permissible under the jury verdict. The Morales
court then held that the factors set forth in R.C. 2929.14(B) were similar to aggravating circumstances because a trial court's finding concerning the existence of one of the two factors in a particular case only meant that a longer term within the acceptable range could be imposed. As a result, the Morales court concluded that the procedure under R.C. 2929.14(B) did not constitute a violation of the basic constitutional right to a jury trial. See, also, State v. Fiedler, 11th Dist. No. 2003-L-190, 2005-Ohio-3388.
In the case sub judice, when the trial court made its findings under R.C. 2929.14(B) that the imposition of the shortest prison term for the three offenses would "demean the seriousness of appellant's conduct and would not adequately protect the public from future crimes," it then had the statutory authority to impose sentences which were longer than the statutory minimum. Thus, because a finding under R.C. 2929.14(B) did not alter the range of the prison term which could be imposed upon Campbell, the fact that the finding was made by the trial court did not violate hisSixth Amendment right to a jury trial. Campbell's fourth assignment of error is without merit.
The judgment of the trial court is affirmed.
Ford, J., Rice, J., concur.