JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Basel Jaradat, appeals his conviction from the Cuyahoga County Court of Common Pleas. Finding no merit to his appeal, we affirm.
 {¶ 2} Jaradat was charged with five counts of rape, one count of kidnapping, and one count of gross sexual imposition. After a jury trial, Jaradat was convicted of one count of rape and one count of kidnapping. The following facts were adduced at trial. *Page 3 
 {¶ 3} Jaradat worked at a Marathon gas station a few blocks from the victim's
home. On December 28, 2005, the victim went to the gas station to buy a pop. When she purchased the pop, Jaradat asked the victim if she was working and if she needed a job. She said she was not working and did in fact need a job. He told her to come back later for an interview.
 {¶ 4} The victim went home, told her mother about the interview and job opportunity, and a few hours later she returned to the gas station for the interview. During the interview/training with Jaradat, the victim received a phone call from her mother who was wondering what was taking her so long. The victim explained that Jaradat was training her and that she would be home soon.
 {¶ 5} After talking to her mother, the victim told Jaradat that she needed to leave soon. Jaradat told the victim that he was closing the gas station early; he turned off the outside lights and locked the door. Jaradat then grabbed the victim by her ponytail and forced her into the back storage area where he raped her.
 {¶ 6} The victim testified that Jaradat put his hand in the victim's shirt and grabbed her breast. Jaradat took off her pants and panties, and performed oral sex upon her. The victim testified that Jaradat digitally penetrated her vagina and rectum. Jaradat tried to force the victim to perform oral sex on him, and then he vaginally raped her. When it was over, Jaradat told her that he would call her tomorrow about coming to work. The victim got dressed and went home. *Page 4 
 {¶ 7} The victim told her mother what happened, and they called the police. Jaradat was arrested and identified by the victim within an hour of the incident. The victim went to Fairview Hospital where a rape kit was performed.
 {¶ 8} At trial the evidence revealed that Jaradat was the source of the semen from the victim's rape kit. Specifically, his semen was found in her vagina.
 {¶ 9} Jaradat took the stand in his defense. Jaradat claimed that he only understood simple English and needed the assistance of an interpreter. Jaradat admitted to performing oral sex on the victim, and he testified that she performed oral sex on him. Jaradat testified that it was a consensual encounter. He denied having vaginal intercourse with the victim. Jaradat claimed that the victim was looking for money in exchange for sexual favors, and he testified that when the victim left, she took $43.
 {¶ 10} Jaradat was found guilty of one count of vaginal rape and one count of kidnapping. He was found not guilty of the remaining counts. Jaradat was sentenced to four years in prison. Jaradat appeals, advancing one assignment of error for our review, which reads as follows:
 {¶ 11} "Mr. Jaradat was denied Due Process of Law when the prosecution was allowed to present testimony over objection from a State officer on direct in the State case-in-chief of Mr. Jaradat's assertion of his right to remain silent and his right to an attorney, to present an exhibit over objection bolstering this infringement, to cross- *Page 5 
examine Mr. Jaradat on his assertion of these rights, and to argue at second close in such a way as to suggest that assertion of these rights suggested consciousness of guilt and suggested recent fabrication of a defense, all while Mr. Jaradat was also deprived of effective assistance of counsel in failing to seek suppression and/of exclusion of this evidence and these comments pre-trial."
 {¶ 12} Under this assignment of error, Jaradat argues that the prosecutor improperly commented upon Jaradat's silence. First, he complains about the following testimony elicited by the state from Det. Remington:
 "Q. And when you advised the defendant of his rights, did he respond to you?
 A. He did.
 Q. And what was his response?
 A. He told me that he would prefer to have an attorney present with him before he made a statement."
 {¶ 13} Jaradat also complains about the following question: "Now, when you speak to a defendant, is that his or her opportunity to tell you his or her side of the story?" The objection was overruled, and Det. Remington answered, "Yes, there's two sides to every story, and we want to hear both sides." Jaradat argues that this was improper underDoyle v. Ohio (1976), 426 U.S. 610.
 {¶ 14} In Doyle, the Supreme Court of the United States explained that the Miranda warnings convey an implied assurance to the accused that the state will not use a defendant's silence against him at trial. Id. at 618. "Doyle rests on `the fundamental unfairness of implicitly assuring a suspect that his silence will not be *Page 6 
used against him and then using his silence to impeach an explanation subsequently offered at trial.'" Wainwright v. Greenfield (1986),474 U.S. 284, 291, quoting South Dakota v. Neville (1983), 459 U.S. 553,565. "Such comments penalize a defendant for choosing to exercise a constitutional right. Prosecutors must therefore take care not to equate the defendant's silence to guilt." State v. Thompson (1987),33 Ohio St.3d 1, 4.
 {¶ 15} Out of context, the state's questions appear to be a blatantDoyle violation; however, how the transcript actually read was as follows:
 "Q. And when you advised the defendant of his rights, what language did you advise him? What language did you advise him of these rights in?
 A. I used English. English is my language.
 Q. And when you advised the defendant of his rights, did he respond to you?
 A. He did.
 Q. And what was his response?
 A. He told me that he would prefer to have and an attorney present with him before he made a statement."
 Q. Okay. And when the defendant spoke to you, what language did he respond to you in when he told you that he would prefer to have an attorney present?
 A. He conversed with me in English.
 Q. Okay. Now, at the time that you had the defendant in the interview room and you advised him of his rights in English, and he responded back to you in English, did you have an interpreter in the room?
 A. No."
 {¶ 16} This testimony was introduced to rebut Jaradat's claim that he did not understand English. In addition, it was introduced to explain the course of the police *Page 7 
investigation of the incident and police procedure. It was not an insinuation of his guilt based on his silence. Nevertheless, this colloquy should have been avoided.
 {¶ 17} Next, Jaradat complains about the following question posed to the detective: "At any time, on December the 29th, did the defendant ever advise you that any type of sexual contact, any type, took place between him and the victim?" Defense counsel objected, and the court overruled the objection after a sidebar conference. Det. Remington answered, "He did not."
 {¶ 18} Finally, Jaradat complains about the state's closing statement:
"Well, ladies and gentlemen, I think you know and I know he does. Okay. He does. We spoke so much English that on that day he neglected to tell anyone on December 28th, `oh, by the way, I performed oral sex on her, she performed oral sex on me, she took $40 from me I have.' Never mentioned anything of that on December 28th. But, see, on March 29th, when we have the DNA, your semen, oh, let's see, what else is he going to say? It's not mine? Of course it's yours. `Okay. I got another argument. She must have inserted it in her, and, oh, I forgot to mention this thing about the $40 and the sex in exchange.'"
 {¶ 19} Jaradat argues that the state improperly implied that Jaradat had recently fabricated a story of consent. He argues that this was an improper comment upon Jaradat's right to remain silent. Jaradat is correct. As stated *Page 8 
previously, Doyle rests on the fundamental unfairness of implicitly assuring a suspect that his silence will not be used against him and then using his silence to impeach an explanation subsequently offered at trial. Comments by prosecutors on post-arrest silence have always been looked upon with extreme disfavor, because they raise an inference of guilt from the defendant's decision to remain silent. State v.Thompson (1987) 33 Ohio St.3d 1, 8-9. "In effect, such comments penalize a defendant for choosing to exercise his constitutional right." Id. at 9. Prosecutors must therefore take care not to equate the defendant's silence to guilt. Id., citing State v. Rogers (1987), 32 Ohio St.3d 70.
 {¶ 20} If a court finds a Doyle violation, the court must then determine if the error is harmless under the test set forth underChapman v. California (1967), 386 U.S. 18. State v. Smith, Cuyahoga App. No. 86690, 2006-Ohio-3156. The standard set forth under Chapman requires the state to "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained" in order for a constitutional error to be ignored as nonprejudicial. Id. quotingChapman, 386 U.S. at 24.
 {¶ 21} Further, in State v. Williams (1983), 6 Ohio St.3d 281, paragraph six of the syllabus, the Supreme Court of Ohio held that constitutional errors are harmless beyond a reasonable doubt "if the evidence, standing alone, constitutes *Page 9 
overwhelming proof of the defendant's guilt." This rule was employed in assessing the prejudicial effect of Doyle errors in State v.Thompson (1987), 33 Ohio St.3d 1.
 {¶ 22} In determining whether the prosecutor's conduct and admission of the post-arrest silence evidence was harmless, this court must consider the extent of the comments, whether an inference of guilt from silence was stressed to the jury, and the extent of other evidence suggesting the defendant's guilt. State v. Gooden, Cuyahoga App. No. 82621, 2004-Ohio-2699; citing State v. Thomas, Hamilton App. No. C-010724, 2002-Ohio-7333.
 {¶ 23} In this case, the state improperly stressed that Jaradat did not relay his story of consent to the detective when he was interviewed, and improperly argued to the jury that Jaradat's testimony was a recent fabrication. Nevertheless, if the evidence, standing alone, constitutes overwhelming proof of the defendant's guilt, then the error was harmless. We find that the evidence, standing alone, which includes the victim's testimony of non-consent, Jaradat's semen inside the victim's vagina, and Jaradat's denial of vaginal intercourse, but admission of other sexual conduct, constitutes overwhelming proof of Jaradat's guilt. Therefore, we cannot say that the prosecutor's comments affected the outcome of this trial.[1] Consequently, we find no merit to Jaradat's argument. *Page 10 
 {¶ 24} Last, we will address Jaradat's argument that his trial counsel was ineffective because he failed to file a motion to suppress.
 {¶ 25} In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that (1) the performance of defense counsel was seriously flawed and deficient, and (2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation.Strickland v. Washington (1984), 466 U.S. 668, State v. Brooks (1986),25 Ohio St.3d 144. "Where the record contains no evidence which would justify the filing of a motion to suppress, the appellant has not met his burden of proving that his attorney violated an essential duty by failing to file the motion." State v. Gibson (1980), 69 Ohio App.2d 91,95.
 {¶ 26} In this case, Det. Remington informed Jaradat of hisMiranda rights and Jaradat stated that he would prefer to speak with an attorney before he made a statement. He signed a form indicating that he understood his rights and did not want to make a statement at that time. The detective then asked Jaradat if he would submit buccal swabs for comparison to any evidence obtained from the rape kit. At first, Jaradat said that he did not want to, but after some further discussion with the detective, he submitted. During the buccal swab, Jaradat stated to the detective that "I was surprised that I was arrested. The victim may have thought I owned the gas station and was looking for money. I'm a nice guy. I'm a very nice guy." The *Page 11 
United States Supreme Court made it clear that a defendant's voluntary comments and confessions are not covered by the Miranda ruling:
 "Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. * * * Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." (Emphasis added.) Arizona v. Miranda
(1966), 384 U.S. 436, 478, 16 L.Ed.2d 694, 726. Accord Rhode Island v. Innis (1980), 446 U.S. 291, 299-300; 64 L.Ed.2d at 307. *Page 12 
 {¶ 27} In Rhode Island v. Innis (1980), 446 U.S. 291, 301, the Supreme Court defined the term "interrogation" for purposes of Miranda as including not only express questioning, "* * * but also * * * any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to illicit an incriminating response from the suspect." "A suspect's decision to waive his Fifth Amendment privilege against compulsory self-incrimination is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct." State v. Dailey (1990), 53 Ohio St.3d 88, 559 N.E.2d 459, at paragraph two of the syllabus.
 {¶ 28} Jaradat argues that defense counsel should have filed a motion to suppress; we disagree. First, Jaradat was not being interrogated by the police when he made his spontaneous statement. State v. Becherer(Feb. 14, 2000), Warren App. No. CA99-07-085, (voluntary, spontaneous statements made without police coercion or inducement do not fall within the protection of Miranda even if the defendant was under arrest and in custody). Second, he was not coerced by the police into making the statement; rather, his statement was made voluntarily in an attempt to minimize his guilt. Finally, it was not error for the trial court to allow the statement into evidence, because it was not made in violation of his Miranda rights. As a result, defense counsel did not err when he did not file a motion to suppress, because it would have been futile. *Page 13 
 {¶ 29} Accordingly, Jaradat's sole assignment of error is overruled.
 Judgment affirmed.
 It is ordered that appellee recover from appellant costs herein taxed.
 The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY EILEEN KILBANE, J., and ANN DYKE, J., CONCUR
[1] We caution the state to refrain from making such comments in future cases. Had Jaradat's semen not been found inside the victim's vagina, or had Jaradat claimed consensual vaginal intercourse, the comments may not have been deemed harmless. *Page 1