[Cite as *State v. Matthews*, 2013-Ohio-3482.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NO. CA2012-09-175 |
| Plaintiff-Appellee, | : | |
| | | O P I N I O N |
| | : | 8/12/2013 |
| - vs - | | |
| | : | |
| SEAN BRYAN MATTHEWS, | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2012-04-0614


Michael T. Gmoser, Butler County Prosecuting Attorney, Michael A. Oster, Jr., Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Charles M. Conliff, 5145 Pleasant Avenue, Suite 18, P.O. Box 18424, Fairfield, Ohio 45018-0424, for defendant-appellant


**M. POWELL, J.**

{¶ 1} Defendant-appellant, Sean Bryan Matthews, appeals his convictions in the Butler County Common Pleas Court for criminal child enticement, gross sexual imposition, and public indecency. For the reasons stated below, we affirm the convictions.

{¶ 2} On April 26, 2012, appellant was indicted on one count of criminal child enticement in violation of R.C. 2905.05 as to N.F., an 11-year-old boy (Count One), one

count of criminal child enticement in violation of R.C. 2905.05 as to W.B., a 13-year-old boy (Count Two), one count of criminal child enticement in violation of R.C. 2905.05 as to T.W., an eight-year-old boy (Count Three), one count of criminal child enticement in violation of R.C. 2905.05 as to N.W., a 10-year-old boy (Count Four), one count of gross sexual imposition in violation of R.C. 2907.05(A)(4) as to N.W. (Count Five), and one count of public indecency in violation of R.C. 2907.09(A)(1) as to N.W. (Count Six). The criminal child enticement charges arose out of allegations that, on separate occasions from October 2011 until March 2012, appellant attempted to coax or entice the victims into a vehicle in Hamilton, Butler County, Ohio. The gross sexual imposition and public indecency charges arose out of allegations that appellant touched N.W.'s penis and exposed his penis to N.W.

{¶ 3} In June 2012, appellant moved to suppress statements he made to detectives while under arrest as well as the pretrial photo-identification of appellant by N.W. and W.B. Appellant also sought to sever the six counts of the indictment into three trials. After a hearing held July 18, 2012, the trial court denied all three motions.

{¶ 4} Consequently, on August 3, 2012, appellant entered no contest pleas on all six counts of the indictment. Appellant was found guilty of all counts and sentenced to 180 days for each criminal child enticement conviction, 48 months for the gross sexual imposition conviction, and 30 days for the public indecency conviction, all sentences to be served concurrently with one another.

{¶ 5} From his convictions, appellant appeals, raising three assignments of error.

{¶ 6} Assignment of Error No. 1:

{¶ 7} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY OVERRULING HIS MOTION TO SUPPRESS STATEMENTS MADE DURING A CUSTODIAL INTERROGATION.

{¶ 8} In his first assignment of error, appellant argues the trial court erred by denying

- 2 -

his motion to suppress, thereby admitting statements detectives obtained in violation of appellant's constitutional right against self-incrimation. Essentially, appellant contends that his constitutional rights were violated when he was questioned by detectives without having waived his *Miranda* rights and the trial court deemed these statements admissible. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966).

{¶ 9} "An appellate court's review of a motion to suppress presents a mixed question of law and fact." *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 15, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is, therefore, in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*; *State v. Bird*, 12th Dist. Butler No. CA2002-05-106, 2003-Ohio-2541, ¶ 9; *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Consequently, an appellate court may not disturb a trial court's ruling on a motion to suppress where it is supported by substantial, credible evidence. *Bird* at ¶ 9; *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997). "Accepting these facts as true, the appellate court must independently determine, without deference to the trial court, whether the trial court's conclusions of law are correct." *Gray* at ¶ 15, citing *Bird* at ¶ 9.

{¶ 10} "It is well-established that before law enforcement officials question a suspect in custody, the suspect must be advised of his *Miranda* rights and make a knowing and intelligent waiver of those rights before any statements obtained during the interrogation will be admissible as evidence." *State v. Hernandez-Martinez*, 12th Dist. Butler No. CA2011-04-068, 2012-Ohio-3754, ¶ 8, citing *State v. Treesh*, 90 Ohio St.3d 460, 470, 2001-Ohio-4. However, "the duty to advise a suspect of constitutional rights pursuant to *Miranda* * * * arises only when questioning by law enforcement rises to the level of a custodial interrogation." *In re J.S.*, 12th Dist. Clermont No. CA2011-09-067, 2012-Ohio-3534, citing *In re J.B.*, 12th Dist. Butler No. CA2004-09-226, 2005-Ohio-7029, ¶ 53. *Miranda* defines custodial interrogation

as any "questioning *initiated by law enforcement officers* after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." (Emphasis added). *Miranda*, 384 U.S. at 444.

{¶ 11} In this case, Detective Paul Davis of the Hamilton Police Department (the "Police Department") spoke with appellant on two separate occasions regarding the allegations against him: once at appellant's residence and again at the Police Department. During the first discussion at appellant's residence, Davis sought to discuss the allegations with appellant's roommate, who owned the vehicle involved in the incidents. During the visit, appellant indicated to Davis that he had not driven the vehicle in several months.

{¶ 12} During the second discussion at the Police Department, appellant was under arrest and being booked for the charges upon which he was subsequently indicted. Davis explained at the suppression hearing that, during this booking process, Davis read appellant his *Miranda* rights, but appellant refused to sign a card waiving those rights. Nonetheless, Davis testified that appellant "continued to talk" and "state[d] that he hadn't done anything." At some point during the booking process, appellant admitted that he had driven his roommate's vehicle on the days that the incidents occurred but denied doing "anything" to the victims. Davis then asked appellant "why he had lied to [Davis] the first time about driving and [appellant] indicated because he was [driving] under suspension[.]"

{¶ 13} The trial court determined, and appellant concedes, that Davis' first conversation with appellant at appellant's residence was not a custodial interrogation subject to *Miranda*. The trial court further found that appellant had been properly Mirandized before the second discussion at the Police Department. However, the trial court suppressed appellant's response to Davis' question of "why did you lie to me" because appellant had not waived his *Miranda* rights. Finally, the trial court determined that appellant's remaining statements made during the booking process, including that he used his roommate's vehicle,

were admissible as the statements were "not in response to an interrogation" and were made after appellant "had been properly Mirandized."

{¶ 14} While the parties argue extensively about whether appellant waived his *Miranda* rights prior to making statements regarding use of his roommate's vehicle, we find that whether appellant waived his *Miranda* rights is immaterial to the case at hand, as all but one statement made by appellant was voluntary and unprovoked by police conduct.

{¶ 15} "The requirements of *Miranda* do not affect the admission of volunteered statements made without police coercion or inducement." *State v. Becherer*, 12th Dist. Warren No. CA99-07-085, 2000 WL 190039, *3 (Feb. 14, 2000), citing *State v. Tucker*, 81 Ohio St.3d 431, 435 (1998). A defendant's voluntary, unprovoked statements to police do not fall within the protections of *Miranda*, even though the defendant was placed under arrest. *Id.*, citing *State v. Williams*, 12th Dist. Butler No. CA92-07-133, 1993 WL 185611, *4 (June 1, 1993); *State v. Jaradat*, 8th Dist. Cuyahoga No. 88290, 2007-Ohio-1971, ¶ 28 ("voluntary, spontaneous statements made without police coercion or inducement do not fall within the protection of *Miranda* even if the defendant was under arrest and in custody").

{¶ 16} In this case, testimony at the suppression hearing revealed that, although appellant refused to sign a waiver of his *Miranda* rights, appellant continued to make statements during the booking process. There is no evidence these statements were provoked by police coercion or inducement or were not otherwise voluntary. The only statement which was elicited by police concerned why appellant had lied to Davis about using the vehicle and this statement was excluded by the trial court.

{¶ 17} Based upon our review of the record, we find that appellant's constitutional rights were not violated by the trial court's denial of the motion to suppress. All but one of the statements in question were voluntary, unprovoked statements made by appellant, and the sole statement actually elicited by police was excluded from evidence.

{¶ 18} Accordingly, appellant's first assignment of error is overruled.

{¶ 19} Assignment of Error No. 2:

{¶ 20} THE TRIAL COURT VIOLATED APPELLANT'S DUE PROCESS RIGHTS BY FINDING THAT THE STATE COMPLIED WITH THE STATUTORY IDENTIFICATION PROCEDURES.

{¶ 21} In his second assignment of error, appellant argues that the trial court erred in denying his motion to suppress evidence of two photo lineups shown to W.B. and N.W., from which he was identified as the perpetrator.  Specifically, appellant contends that the photo lineup procedure utilized by the Police Department did not substantially comply with the requirements of R.C. 2933.83 by failing to utilize the "folder system."  Therefore, appellant asserts that the identifications of appellant by W.B. and N.W. should have been suppressed. We reject this contention and affirm the trial court's determination that the Police Department complied with R.C. 2933.83 in conducting the photo lineup and in overruling appellant's motion to suppress his identification.[1]

{¶ 22} As stated above, an appellate court may not disturb a trial court's ruling on a motion to suppress where it is supported by substantial, credible evidence.  *State v. Bird*, 2003-Ohio-2541 at ¶ 9.

{¶ 23} At the July 18, 2012 motions hearing, Detective Donald Taylor recalled conducting two lineups of six photographs—referred to as the "six-pack" photo array—which were separately shown to W.B. and N.W.  Taylor testified that he acted as a "blind

---

1. Before the trial court, appellant sought only the suppression of his identification based upon the photo lineups. Appellant now concedes that suppression is not a remedy for noncompliance with R.C. 2933.83.  Therefore, rather than seeking suppression of his identification, appellant now seeks remand of this issue with direction that the trial court permit him to submit evidence of noncompliance with R.C. 2933.83 and instruct the jury that it may consider such noncompliance in determining the reliability of his identification.  These were not remedies sought before the trial court and, therefore, are not properly preserved for appeal. Additionally, these remedies were waived by appellant's no contest plea. Our discussion of this matter will be confined to the trial court's ruling on the motion to suppress regarding compliance with R.C. 2933.83.

administrator" during the lineups, meaning that he had not created the photo lineups, was unaware who the suspect was in the case, and did not know whether the suspect was even depicted in one of the six photographs. Taylor additionally testified concerning the "investigative photo array procedure checklist" that he followed in administering the photo lineup. He explained that the checklist "documents the requirements of what you're trying to accomplish with the photo array" and "describes who the assigned investigator is; who the blind administrator is; a statement indicating that the suspect may or may not be included; [and] photos." Taylor testified that, when presenting the photo lineup to each victim, he would read statements verbatim from the checklist and follow all the necessary steps. Taylor then showed the six-pack photo lineup to W.B. and N.W. on separate occasions and both witnesses identified appellant "very quickly" out of the lineup.

{¶ 24} "R.C. 2933.83(B) requires any law enforcement agency or criminal justice entity that conducts live lineups and photo lineups to adopt specific procedures for conducting the lineups," and to comply with minimum requirements outlined in the statute. *State v. Ruff*, 1st Dist. Hamilton No. C-110250, 2012-Ohio-1910, ¶ 5.

{¶ 25} Appellant does not contend that the Police Department failed to satisfy the requirements of R.C. 2933.83(B). In fact, appellant acknowledges that the trial court determined that the six-pack photo array was not unreliable or impermissibly suggestive. Rather, appellant's argument is that the six-pack photo array used in this case was improper under R.C. 2933.83 simply because it was not the folder system detailed in R.C. 2933.83(A)(6). Specifically, appellant contends that R.C. 2933.83 mandates that only the folder system or, at a minimum, a substantially similar system, can be used to identify a perpetrator through a photo lineup and, as the folder system was not used by the Police Department, the case must be reversed.

{¶ 26} We find appellant's argument unpersuasive. After a thorough review of R.C.

2933.83, we can find no indication that the folder system or a substantially similar system *must* be utilized by law enforcement agencies or criminal justice entities in performing a photo lineup. *See State v. Henry*, 6th Dist. Lucas No. L-11-1157, 2012-Ohio-5552, ¶ 41 ("The statute does not require the use of the folder system"). On the contrary, R.C. 2933.83(B) requires only that a law enforcement agency or criminal justice entity "adopt specific procedures for conducting" lineups which meet the minimum requirements outlined in the statute. The statute neither expressly nor impliedly mandates the sole use of the folder system or a substantially similar system. Even R.C. 2933.83(D), which allows a law enforcement agency or criminal justice entity to adopt a different type of lineup procedure so long as it is considered "more effective" by the "scientific community," does not mandate the use of the folder system. Rather, R.C. 2933.83(D) provides that systems utilizing requirements other than those enumerated in R.C. 2933.83(B) may be permissible in conducting live or photo lineups.

{¶ 27} Thus, as the Police Department in this case established a procedure wherein Taylor, a blind administrator, made separate written records for each witness that included the signatures of the witnesses and the identification of appellant, and otherwise complied with R.C. 2933.83(B), we find that the trial court did not err in denying appellant's motion to suppress.

{¶ 28} Even if the Police Department failed to comply with R.C. 2933.83 by not using the folder system or a substantially similar system, the trial court still did not err in denying appellant's motion to suppress, as suppression is not the remedy for a violation of R.C. 2933.83. Although R.C. 2933.83(C)(1) provides that evidence of any failure to comply with the statute "shall be considered by trial courts in adjudicating motions to suppress eyewitness identification resulting from or related to the lineup," the statute "does not provide an independent ground for suppression" and "noncompliance with R.C. 2933.83(B) alone is

insufficient to warrant suppression." *See Ruff*, 2012-Ohio-1910 at ¶ 6-8; *State v. Simpson*, 2d Dist. Montgomery No. 25069, 2013-Ohio-1072 ("the 'penalty' for failure to comply with the statute is not suppression, but the other remedies provided for in the statute"); *State v. Jackson*, 4th Dist. Pickaway No. 11CA20, 2012-Ohio-6276, ¶ 25 ("failure to comply with R.C. 2933.83 does not, by itself, warrant the suppression of evidence"); *State v. Parks*, 7th Dist. Columbiana No. 11 CO 20, 2012-Ohio-3010, ¶ 17 ("the statue does not provide for automatic exclusion of a line-up conducted in a manner different than that provided thereunder"); *State v. Alexander*, 8th Dist. Cuyahoga No. 98941, 2013-Ohio-2533, ¶ 27 ("R.C. 2933.83(C)(1), however, does not provide an independent basis upon which to suppress evidence, and a trial court errs in solely relying on the statute in suppressing an identification"). "Indeed, the 'penalty' for failure to comply with R.C. 2933.83 is not suppression, but that 'the jury shall be instructed that it may consider credible evidence of noncompliance in determining the reliability of any eyewitness identification.'" *State v. Stevenson*, 2d Dist. Montgomery No. 24821, 2012-Ohio-3396, ¶ 16, quoting R.C. 2933.83(C)(3).

{¶ 29} In order to seek suppression of a photo lineup, a defendant must argue that the procedure of the photo lineup did not comply with R.C. 2933.83 *and* that the photo lineup was a violation of his constitutional rights. *Ruff* at ¶ 8 (noting that the defendant expressly declined to argue that the photo lineups were impermissibly suggestive under the Fourteenth Amendment). In the case at hand, appellant does not raise a constitutional issue, stating that constitutional considerations "are not at issue here." Rather, appellant solely asserts that the statutory requirements of R.C. 2933.83 are not satisfied by the six-pack photo array system and, therefore, the identifications of appellant by W.B. and N.W. should have been suppressed.

{¶ 30} For the foregoing reasons, we find that the trial court did not err in denying appellant's motion to suppress.

{¶ 31} Accordingly, appellant's second assignment of error is overruled.

{¶ 32} Assignment of Error No. 3:

{¶ 33} APPELLANT'S RIGHT TO A FAIR TRIAL WAS VIOLATED BY THE MISJOINDER OF UNRELATED CRIMINAL OFFENSES.

{¶ 34} In his third assignment of error, appellant argues that the trial court committed plain error by permitting the joinder of unrelated offenses. Specifically, appellant argues that the trial court should have granted his motion to sever the six counts into three trials: one trial on Count One, one trial on Count Two, and one trial on Counts Three through Six. Appellant contends that a consolidated trial on all six counts would have resulted in the admission of "other acts" evidence that would be inadmissible in separate trials and that the jury would hear "inflammatory" testimony regarding T.W. and N.W. that would adversely affect the charges relating to N.F. and W.B. Thus, appellant claims that he was prejudiced by the trial court's decision denying his request for severance.

{¶ 35} "The decision to grant or deny a motion to sever is a matter in the trial court's discretion, and therefore, we review the trial court's decision under an abuse of discretion standard." *State v. Rose*, 12th Dist. Butler No. CA2011-11-214, 2012-Ohio-5607, ¶ 11, citing *State v. Moshos*, 12th Dist. Clinton No. CA2009-06-008, 2010-Ohio-735, ¶ 76. "An abuse of discretion implies that the trial court's decision was unreasonable, arbitrary, or unconscionable." *Id.*, citing *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 130.

{¶ 36} "'The law favors joining multiple offenses in a single trial under Crim.R. 8(A) if the offenses charged 'are of the same or similar character.'" *Id.* at ¶ 12, quoting *State v. Lott*, 51 Ohio St.3d 160, 163 (1990); *State v. Torres*, 66 Ohio St.2d 340 (1981). "However, a defendant is allowed, under Crim.R. 14, to move to sever offenses that have otherwise been properly joined where it appears that joinder would be prejudicial." *Id.*, citing *State v. Schaim*, 65 Ohio St.3d 51, 58 (1992).

- 10 -

**{¶ 37}** To prevail on a claim that the trial court erred in denying a motion to sever, the appellant must affirmatively demonstrate that "(1) his rights were prejudiced, (2) he provided the trial court with sufficient information enabling it to weigh the consideration favoring joinder against the defendant's right to a fair trial, and (3) the trial court abused its discretion in refusing to separate the charges for trial." *Schaim* at 59; *Rose* at ¶ 13.

**{¶ 38}** "The state may negate a claim of prejudice in one of two ways." *Rose* at ¶ 14. "The first is through the 'other acts' test, where the 'state must demonstrate it could have introduced evidence of the joined offenses at separate trials, pursuant to the 'other acts' provision of Evid.R. 404(B).'" *Id.*, citing *Lott* at 163. "Alternatively, under the 'joinder test' the state can refute a claim of prejudice by showing 'that evidence of each crime joined at trial is simple and direct.'" *Id.*, citing *Moshos* at ¶ 79. If the state can establish that the evidence is "simple and direct," then there is no need to meet the more strict "other acts" test. *Id.*, citing *State v. Hensley*, 12th Dist. Warren No. CA2009-11-156, 2010-Ohio-3822, ¶ 40. In other words, a demonstration by the state "that the evidence relating to each crime is simple and direct negates any claims of prejudice and renders joinder proper." *Moshos* at ¶ 80.

**{¶ 39}** In this case, the trial court determined that the evidence relative to each count of the indictment is simple and direct and that appellant failed to meet his burden of demonstrating that joinder of these counts is prejudicial. We find no abuse of discretion in the trial court's determination.

**{¶ 40}** "Ohio appellate courts have upheld joinder in sex abuse cases involving multiple child victims where the evidence as to each offense is separate, uncomplicated and sufficient to support a conviction without necessitating the use of evidence relating to other offenses." *State v. Ashcraft*, 12th Dist. Butler No. CA2008-12-305, 2009-Ohio-5281, ¶ 19, citing *State v. Eads*, 8th Dist. Cuyahoga No. 87636, 2007-Ohio-539, ¶ 50-53; *State v. Campbell*, 11th Dist. Lake No. 2004-L-126, 2005-Ohio-6147, *5-6 (reversed on other

grounds); *State v. Owens*, 2d Dist. Montgomery No. 17394, 2000 WL 217219, *10-11 (Feb. 25, 2000); *State v. Strobel*, 51 Ohio App.3d 31, 32-33 (3d Dist.1988).

{¶ 41} At the July 18, 2012 motions hearing, the trial court heard evidence that the charges alleged in this case involved four different victims, occurred at different times, and occurred in different places. Although appellant drove the same vehicle during each offense, he approached different victims at different locations. In addition, there is no indication in the record that appellant would have defended the charges differently had they been tried separately as opposed to jointly. *See Ashcraft* at ¶ 25; *State v. Franklin*, 62 Ohio St.3d 118, 123 (1991).

{¶ 42} Based upon the foregoing, and after a thorough review of the record, we find the trial court did not err in denying appellant's request for severance where the evidence concerning each offense was separate and distinct, and simple and direct. *See Ashcraft* at ¶ 27. Because our analysis as to this issue is determinative, we need not address the issue of whether evidence of each offense would have been admissible at separate trials pursuant to Evid.R. 404(B). *See Lott*, 51 Ohio St.3d at 163.

{¶ 43} Accordingly, appellant's third and final assignment of error is overruled.

{¶ 44} Judgment affirmed.

RINGLAND, P.J., and PIPER, J., concur.