[Cite as *State v. Jarmon*, 2022-Ohio-2327.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2021-08-091 |
| - vs - | : | O P I N I O N<br>7/5/2022 |
| | : | |
| DANIEL RAY JARMON, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2020-01-0109

Michael T. Gmoser, Butler County Prosecuting Attorney, and Michael Greer, Assistant Prosecuting Attorney, for appellee.

The Law Office of Wendy R. Calaway, Co., LPA, and Wendy R. Calaway, for appellant.

**HENDRICKSON, J.**

{¶1} Appellant, Daniel Ray Jarmon, appeals his convictions on two counts of first-degree aggravated robbery. Jarmon contends that: his convictions are not supported by the evidence; his trial counsel was ineffective; he was compelled to wear identifiable jail clothing during trial; and his sentence is unlawful. For the reasons discussed below, we affirm the trial court's rulings and his convictions.

## I. Factual and Procedural Background

{¶2} On December 22, 2019, around 2:30 a.m., Rosario Esparza was robbed at gunpoint on Aster Park Drive in West Chester, Ohio. Nearby, about 20 minutes later, on Triangle Drive, Wuilly Juarez Rivera, was also robbed at gunpoint. Following an investigation, police arrested Jarmon for the crimes. In June 2020, he was indicted on two counts of first-degree aggravated robbery in violation of R.C. 2911.01(A)(1), each with a three-year firearm specification. The case was tried to a jury, which heard the following evidence.

{¶3} Each victim testified about his robbery. Esparza testified that he was getting into his car when a man came up behind him, put a gun to his shoulder and demanded his wallet and money. He did not have his wallet on him. The robber started rooting around in Esparza's pockets and pulled out his cellphone, housed in a red case. The robber then fled with the cellphone. Esparza told police that the robber was wearing blue jeans and a black top. He testified that a few days after the robbery officers showed him an array of six photos and asked him if he could identify the robber. Esparza selected Jarmon's picture but told the officers that he was only 50% certain. He testified at trial that he was now 100% certain that Jarmon was the robber.

{¶4} As for Rivera, he testified that he was locking his car when he felt a gun on his head. The robber told him to raise his hands and face the car. The robber rooted through Rivera's pockets and found some cash and his wallet, containing Rivera's student ID and soccer ID. Rivera told police that he saw the robber only from behind and did not see his face at all. He described the man as tall with a thick build and wearing a hoodie that might have been gray or black in color.

{¶5} The West Chester Police Department began an investigation soon after the robberies occurred. Detective Jason Flick was assigned to the case and testified that police

were able to locate Esparza's cellphone by identifying the cell tower that the phone was pinging. They placed it at the Meadow Ridge Apartments on Aster Park Drive, near the locations of both robberies. Around 8:00 p.m., on the day of the robberies, Detective Flick parked his unmarked cruiser near the apartments and settled in to watch. He testified that, while he watched, other officers tracked Esparza's phone as it pinged every 30 minutes at various locations around Cincinnati and they kept him updated on the phone's location. At 12:19 a.m. (on December 23), they told Detective Flick that the phone had just pinged near the IKEA store a half-mile away. Flick testified that three minutes later he watched a man, who he later learned was Jarmon, enter Apartment Nine. At 12:49 a.m., Detective Flick was told that Esparza's phone had just pinged at Meadow Ridge Apartments.

{¶6} Detective David Mize testified that he obtained a warrant to search Apartment Nine based on the ping information and on what Detective Flick had observed. Detective Kevin Burger led the search, which police executed around 6:00 a.m., on December 24. Jarmon and his girlfriend were the only people in the apartment. Detective Burger testified that in Jarmon's bedroom police found an expired Ohio driver license belonging to Jarmon and, nearby, an R.G. .38 special handgun. In the nightstand, they found Esparza's red cellphone case. Police also found a black hoodie on the bed. Detective Burger testified that in the kitchen trash they found Rivera's wallet as well as his student ID and soccer ID. Finally, hidden in the closet of an unoccupied bedroom, police found Esparza's cell phone.

{¶7} Detective Flick testified that police also obtained a search warrant for Jarmon's cellphone records. The information in the records showed that the phone had been in the area when the robberies occurred. The phone had been used to place a call near the Meadow Ridge Apartments on December 22 at 1:43 a.m., less than an hour before Esparza was robbed.

{¶8} The handgun found in Jarmon's bedroom was sent to the Ohio Bureau of

Criminal Investigation (BCI) for DNA testing. Sabrina Selbe, a forensic scientist at BCI, performed the DNA tests. She testified that, although the DNA profile was mixed, Jarmon was the major contributor to the profile on the gun's grip and the front-sight area.

{¶9} Before trial, defense counsel filed a motion to suppress Esparza's photo-array identification. Counsel argued that the photo lineup was unnecessarily suggestive and created a likelihood of misidentification and argued that the state failed to show that the lineup procedures police used satisfied either the statutory requirements in R.C. 2933.83 or constitutional requirements. The trial court disagreed and overruled the suppression motion.

{¶10} At the close of the evidence, the jury found Jarmon guilty on both counts of first-degree aggravated robbery and both three-year firearm specifications. The trial court sentenced Jarmon on the first count of aggravated robbery, under the Reagan Tokes Law, to an indefinite prison term of 11 to 16.5 years and sentenced him to an 11-year term on the second count. The court sentenced him to a pair of 3-year prison terms for the firearm specifications. The trial court ordered consecutive service of all the terms, resulting in an aggregate sentence of 28 to 33.5 years in prison.

{¶11} Jarmon appealed.

## II. Analysis

{¶12} Jarmon presents four assignments of error. The first challenges the evidence supporting his convictions, the second asserts a claim of ineffective assistance of trial counsel, the third claims that he was compelled to wear identifiable jail clothing during trial, and the fourth challenges his sentence.

### A. Evidentiary Challenges

{¶13} The first assignment of error alleges:

{¶14} THE TRIAL COURT ERRED IN CONVICTING APPELLANT BASED ON

INSUFFICIENT EVIDENCE AND IN CONVICTING HIM AGAINST THE MANIFEST WEIGHT OF EVIDENCE IN VIOLATION OF THE FOURTEENTH AMENDMENT.

{¶15} Jarmon contends that the evidence fails to prove that it was he who committed the robberies. He argues that there is no direct evidence placing him at the scene of either robbery or showing that it was he who possessed the stolen items found in the apartment.

{¶16} "An appellate court's task when reviewing whether sufficient evidence supports a defendant's conviction is well-settled and familiar." *State v. Jones*, 166 Ohio St.3d 85, 2021-Ohio-3311, ¶ 16. The reviewing court asks whether "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, fn. 4 (1997). "By contrast, to evaluate a manifest-weight claim, a court must review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. The court must decide whether '"the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed."'" (Citation omitted.) *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, ¶ 208, quoting *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, ¶ 328, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶17} Jarmon is correct that no direct evidence was presented that he was the one who committed the robberies. The Ohio State Supreme Court has held that "[c]ircumstantial evidence and direct evidence inherently possess the same probative value." *Jenks* at paragraph one of the syllabus. Here, the circumstantial evidence presented creates a strong link between Jarmon and the robberies. The stolen cellphone and its case, and the stolen wallet and IDs were found in his apartment. A handgun was used to commit each of

the robberies and a handgun with Jarmon's DNA on the grip was found in his bedroom. There is no evidence that anyone else possessed either the stolen items or the handgun. All in all, the evidence persuasively and overwhelmingly shows that it was Jarmon who committed the robberies. This is not the "'exceptional case in which the evidence weighs heavily against the conviction,'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Martin* at 175. Given the strength of the evidence presented, we conclude that in finding Jarmon guilty the jury neither lost its way nor created a miscarriage of justice.

{¶18} "[A] determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Citations omitted.) *State v. Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15. Because "a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citations omitted.) *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11. As we have concluded that Jarmon's convictions are not against the manifest weight of the evidence, we also conclude that his convictions are supported by sufficient evidence.

{¶19} The first assignment of error is overruled.

### B. Ineffective Assistance of Counsel

{¶20} The second assignment of error alleges:

{¶21} APPELLANT WAS DEPRIVED OF HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEEN AMENDMENT AND RELATED OHIO CONSTITUTIONAL RIGHTS.

{¶22} Jarmon contends that his trial counsel's performance was prejudicially deficient with respect to the motion to suppress, at trial, and at sentencing.

{¶23} "Reversal of a conviction for ineffective assistance of counsel requires that the defendant show that counsel's performance was deficient and that the deficient

performance prejudiced the defendant so as to deprive him of a fair trial." *State v. Grate*, 164 Ohio St.3d 9, 2020-Ohio-5584, ¶ 49, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984), and *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraphs two and three of the syllabus. "[J]udicial scrutiny of counsel's performance must be highly deferential." *State v. Bird*, 81 Ohio St.3d 582, 585 (1998), citing *Strickland* at 689. To establish prejudice, the defendant must "demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, ¶ 140, quoting *Strickland* at 688.

{¶24} Jarmon first contends that trial counsel was ineffective in arguing for suppression of Esparza's photo identification. In the motion to suppress, counsel argued that the photo lineup was unnecessarily suggestive and created a likelihood of misidentification and argued that the state failed to show that the procedures used satisfied either the statutory requirements for photo lineups in R.C. 2933.83 or constitutional requirements. Jarmon states that counsel also should have argued that the photo lineup was unnecessarily suggestive and created a likelihood of misidentification both because Esparza was shown two different photo lineups and Jarmon's photo was the only one that appeared in both and because police did not use a folder system, which Jarmon asserts is required by R.C. 2933.83.

{¶25} We find no merit in either potential argument. We see nothing in the record that suggests Esparza was shown two photo lineups. Esparza testified about only one lineup, and only one lineup was submitted into evidence (State's Exhibit 40). As for a folder system, this court has held that R.C. 2933.83 does not require one: "After a thorough review of R.C. 2933.83, we can find no indication that the folder system or a substantially similar system *must* be utilized by law enforcement agencies or criminal justice entities in performing a photo lineup." (Emphasis sic.) *State v. Matthews*, 12th Dist. Butler No.

CA2012-09-175, 2013-Ohio-3482, ¶ 26, citing *State v. Henry*, 6th Dist. Lucas No. L-11-1157, 2012-Ohio-5552, ¶ 41 (stating that "[t]he statute does not require the use of the folder system"). Therefore, Jarmon has failed to establish deficient performance in connection with the suppression of Esparza's photo identification.

**{¶26}** Jarmon next contends that trial counsel's performance was deficient during the trial. He first argues that counsel should have objected to Detective Flick's testimony about the ping information from Esparza's and Jarmon's cellphones. Jarmon claims that the testimony was inadmissible because: (1) Flick lacked personal knowledge; (2) the testimony was hearsay; and (3) it violated the Confrontation Clause. "A witness is required to testify from first-hand knowledge which has been acquired by perceiving a fact[.]" 1980 Staff Note, Evid.R. 602. For this reason, Evid.R. 602 excludes testimony from a witness who has no "personal knowledge of the matter." Evid. R. 802 excludes hearsay testimony. "Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Finally, the Confrontation Clause guarantees a defendant's right to confront witnesses against him, which means that "[a] witness's testimony against a defendant is * * * inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309, 129 S.Ct. 2527 (2009).

**{¶27}** Detective Flick testified that before he began his investigation the police had already used the ping information from Esparza's cellphone to locate it in the area of the apartment complex, so he began his investigation by conducting surveillance there. Flick further testified that while he watched the apartment complex another officer used the cellphone's ping information to track the phone and continuously updated him as to its location. This testimony was not offered to prove the location of Esparza's cellphone.

Instead, it was used to explain why Detective Flick was watching the apartment complex. It was also a reason why police obtained a search warrant for Jarmon's apartment. Ultimately, it was not the location of Esparza's cellphone that connected Jarmon to the robberies, but the items discovered inside his apartment. This ping testimony had little to do with whether Jarmon committed the robberies. While the ping information helped identify Jarmon as a possible suspect, the stolen items found in his apartment made him the leading primary suspect.

{¶28} The ping testimony regarding Jarmon's cellphone, though, is another matter. Detective Flick's testimony about Jarmon's cellphone records, obtained with a second search warrant, was offered to connect Jarmon to the robberies by placing him near their locations around the time that they occurred. The state implicitly concedes that this testimony was inadmissible hearsay, as it was offered to prove the location of Jarmon's cellphone. Nevertheless, we agree with the state that even absent this testimony, the evidence linking Jarmon to the crimes was overwhelming. Even if this testimony had been excluded, the outcome of the trial would not have been different.

{¶29} Jarmon also argues that trial counsel failed to meaningfully cross-examine the forensic scientist about the DNA test results. The scientist testified that the DNA profile found on the handgun recovered from Jarmon's bedroom was mixed but that Jarmon's profile was dominant. Jarmon claims that mixed DNA profiles are complicated to interpret and subject to mistakes involving subjectivity and bias, and he alleges that trial counsel should have asked the forensic scientist about the editing, application, and error rates prevalent in this kind of DNA analysis.

{¶30} The Ohio Supreme Court has said that to prevail on a claim like Jarmon makes here, "a defendant must identify the questions that he believes his counsel should have asked and must provide some sense of the information that might have been elicited."

(Citation omitted.) *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, ¶ 155. Otherwise, the reviewing court "will presume that the choice to forgo cross-examination 'constituted a legitimate tactical decision.'" (Citations omitted.) *Id.*, quoting *State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, ¶ 220. Jarmon does not indicate what information his questions would have elicited, and thus whether they would have been effective is merely speculation on his part. Jarmon fails to explain how further cross-examination of the forensic scientist would have made an appreciable difference in this case. *See State v. Foust*, 105 Ohio St.3d 137, 2004-Ohio-7006, ¶ 90 (holding that counsel made a legitimate tactical decision to forgo additional cross-examination when the defendant "fail[ed] to explain how further cross-examination of [the witness] would have made a difference in his case").

{¶31} Lastly, Jarmon contends that trial counsel's performance was deficient at the sentencing hearing. Jarmon first claims that counsel was not prepared for sentencing and knew nothing about mitigation factors that might have reduced his sentence.

{¶32} At sentencing, trial counsel mentioned Jarmon's criminal record, that he maintained his innocence, and had possible mental-health issues:

> * * * I know that Mr. Jarmon, you know, when we first met and through the course of this matter has steadfastly maintained his innocence with myself. It's one of the reasons we had this matter set for trial and took this matter to trial.
>
> * * * As evidenced by some of the pre-sentence investigation as well as look at his—review of his discovery, I know Mr. Jarmon had one contact with the Court as a juvenile, at least that I can recall. And I think most of his contacts with the Court were primarily traffic and/or misdemeanor related.
>
> I don't know that—remember specifically if Mr. Jarmon had any prior felony contacts with the Court. * * * I know there w[ere] some remarks in the pre-sentence investigation about having some anxiety and depression, that he was using illicit substances to help self-medicate that. I don't know if that had any play or implication in this related matter or not.

**{¶33}** After counsel spoke, several members of Jarmon's family addressed the court. They talked about Jarmon's childhood trauma, history of mental health problems, and his problems with learning and addiction. Jarmon contends that trial counsel should have investigated these issues, presented documentation, consulted with an expert on the effects of childhood trauma, and called additional witnesses.

**{¶34}** "In general, the extent to which counsel presents mitigation evidence at a sentencing hearing is a matter of trial strategy. '[E]ven debatable trial tactics and strategies do not establish ineffective assistance of counsel.'" (Citations omitted.) *State v. Brewer*, 12th Dist. Brown No. CA2020-11-008, 2021-Ohio-2289, ¶ 14, quoting *State v. Cunningham*, 12th Dist. Butler No. CA2017-03-034, 2018-Ohio-912, ¶ 25. The record here does not show that trial counsel failed to investigate the possibility of presenting additional mitigating evidence. We see little reason to conclude that counsel should have consulted with an expert concerning Jarmon's childhood trauma, mental health, learning disabilities, or history of addiction. In addition, it is entirely possible that it was counsel who arranged for Jarmon's family members to address the trial court—an arguably effective way of presenting the mitigating factors that Jarmon cites. Nevertheless, Jarmon has not demonstrated a reasonable probability that his sentence would have been different if trial counsel had investigated further and presented expert witnesses on these mitigating issues.

**{¶35}** Jarmon also claims that trial counsel should have objected to the constitutionality of his indefinite sentence under the Reagan Tokes Law to preserve it for review. We have consistently held that the Reagan Tokes Law is constitutional. *See State v. Rogers*, 12th Dist. Butler No. CA2021-02-010, 2021-Ohio-3282, ¶ 11, 20 (stating that the Reagan Tokes Law does not violate due process, the separation-of-powers doctrine, or the right to trial by jury). Despite some disagreement among Ohio appellate districts on this

issue, the Ohio Supreme Court has not resolved it. Until that court does so, in this district an indefinite sentence imposed under the Reagan Tokes Law is constitutional. We see no prejudice from counsel's not objecting to the constitutionality of Jarmon's sentence.

{¶36} Jarmon has failed to establish a claim for ineffective assistance of trial counsel. The second assignment of error is overruled.

### C. Appearing in Jail Clothing at Trial

{¶37} The third assignment of error alleges:

{¶38} MR. JARMON WAS DEPRIVED OF HIS RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW BY BEING FORCED TO APPEAR BEFORE THE JURY IN JAIL CLOTHING.

{¶39} Jarmon contends that he was compelled to appear in jail clothing at trial and that he did not knowingly and intelligently waive the right not to appear in jail clothing.

{¶40} The United States Supreme Court held in *Estelle v. Williams,* 425 U.S. 501, 504, 96 S.Ct. 1691 (1976), that a defendant's right to due process may be violated if the defendant is compelled to stand trial before a jury while dressed in identifiable jail clothing. The Court further held that "the failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation." *Id.* at 512-513.

{¶41} As an initial matter, the record belies Jarmon's claim that he was wearing identifiable jail clothing. Based on the trial transcript, it appears that Jarmon was wearing gray sweat clothes, as this is what several witnesses described him as wearing. Even if the gray sweat clothes could be said to suggest jail clothing, Jarmon failed to demonstrate that this is what he was compelled to wear. At one point, the trial court asked defense counsel if Jarmon was going to have "different clothing," and counsel replied that he was unsure, saying that he did not know "where things stood." Neither this nor anything else in the

record suggests that Jarmon was forced to wear the clothing that he did. And Jarmon never objected to wearing the clothing in front of the jury.

{¶42} Jarmon fails to convince us that he was compelled to appear in identifiable prison clothing at trial. The third assignment of error is overruled.

### D. Sentence

{¶43} The fourth assignment of error alleges:

{¶44} THE SENTENCE IMPOSED WAS CONTRARY TO LAW.

{¶45} Jarmon contends that his sentence is contrary to law for several reasons. First, he argues that his indefinite sentence is unconstitutional because the Reagan Tokes Law violates the separation-of-powers doctrine and procedural due process. Jarmon failed to raise the constitutionality of Reagan Tokes in the trial court. Therefore, he has waived it. Even if the issue were properly before us, as we noted earlier, we have consistently held that the Reagan Tokes Law does not violate the separation-of-powers doctrine or due process. *See State v. Rogers*, 2021-Ohio-3282, at ¶ 11.

{¶46} Jarmon next argues that the trial court penalized him for pleading not guilty rather than accepting the state's plea offer—in other words, that the trial court punished him for exercising his right to a jury trial. "It is axiomatic that 'a defendant is guaranteed the right to a trial and should never be punished for exercising that right.'" *State v. Noble*, 12th Dist. Warren No. CA2014-06-080, 2015-Ohio-652, ¶ 11, quoting *State v. O'Dell*, 45 Ohio St.3d 140 (1989), at paragraph two of the syllabus. "When an appearance of an augmented sentence is created, even when a defendant may not in fact have been punished for electing to go to trial, a defendant's sentence must be vacated." (Citation omitted.) *Id.* at ¶ 12. But: "vacating a defendant's sentence is not necessary if the court unequivocally dispels any such inference by clearly stating the defendant's decision to go to trial was not considered in imposing the sentence." (Citations omitted.) *Id.*

**{¶47}** Jarmon asserts that the trial court's statements at sentencing, at the very least, create an appearance that the court punished him for taking his case to trial. At the sentencing hearing, the trial court referred to Jarmon's refusal to consider a plea deal despite the prospect of a lengthy sentence but said that it was not punishing him for going to trial:

> The Defendant did try the case, as Mr. Bissell's already alluded to. After numerous discussions the Court had with Mr. Jarmon about the potential for a very large sentence in this matter, giving him the opportunity to consider a plea arrangement as Mr. Bissell's already described. Mr. Jarmon, from the Court's point of view and Mr. Bissell's point of view, continued to play games during the entire time including during the course of the trial. He never did indicate any real willingness to enter a guilty plea in this matter in spite of the fact that on numerous times it was discussed.
>
> *Nevertheless, the Court is not going to be punishing the Defendant for the fact that he took this case to trial. This Court does not impose jury taxes, if you will.* On the other hand, the Court finds that as Mr. Bissell's already alluded to, that this is the worst of the worst. The Defendant robbed people at gunpoint on two separate occasions on the same date. And truly victimized these people. The Court certainly has some thoughts about the people that he victimized, but be that as it may, the evidence bore out that he did rob these people at gunpoint.

(Emphasis added.) While it would have been better had the trial court not said anything about rejecting the state's plea deal, the court did expressly say that it was not punishing Jarmon for taking the case to trial. By doing so, the court "unequivocally dispel[led]" any inference that it was punishing Jarmon for electing trial.

**{¶48}** Lastly, Jarmon argues that the maximum and consecutive sentences imposed by the trial court are not supported by the record. However, he does not present much of an argument as to why he thinks this. He claims only that the trial court's finding that this case represents the "worst of the worst" is not supported by the facts.

**{¶49}** R.C. 2953.08(G) defines the standard of appellate review for felony

sentences. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 21. An appellate court may modify or vacate a sentence if it clearly and convincingly finds either that "the record does not support the sentencing court's findings under" certain specified statutory provisions or that "the sentence is otherwise contrary to law." R.C. 2953.08(G)(2)(a) and (b). Generally, "a sentence is not contrary to law when the trial court imposes a sentence within the statutory range, after expressly stating that it had considered the purposes and principles of sentencing set forth in R.C. 2929.11, as well as the factors in R.C. 2929.12." *State v. Rodeffer*, 2d Dist. Montgomery Nos. 25574, 25575, and 25576, 2013-Ohio-5759, ¶ 32, citing *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, ¶ 18. An appellate court is not permitted "to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, ¶ 42. In other words, "R.C. 2953.08(G)(2) does not permit an appellate court to conduct a freestanding inquiry[.]" *Id.*

{¶50} Jarmon's 11-year minimum prison terms for each of his aggravated robbery offenses are the maximum terms for a first-degree felony—but the terms are within the statutory range. *See* R.C. 2929.14(A)(1)(a). Also, the trial court here stated that it had considered the two sentencing statutes, R.C. 2929.11 and 2929.12. Therefore, we need inquire no further on the individual sentences that the trial court imposed.

{¶51} While concurrent sentences of multiple offenses is presumed, R.C. 2929.14(C)(4) permits a court to order consecutive service if it makes three findings: (1) "that the consecutive service is necessary to protect the public from future crime or to punish the offender," (2) "that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public," and (3) that one of the following applies:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

The trial court here made the requisite statutory findings, finding that Jarmon's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by him.

{¶52} A defendant may challenge a trial court's consecutive-sentence findings. "[W]here a trial court properly makes the findings mandated by R.C. 2929.14(C)(4), an appellate court may not reverse the trial court's imposition of consecutive sentences unless it first clearly and convincingly finds that the record does not support the trial court's findings." *State v. Withrow*, 2d Dist. 2d Dist. Clark No. 2015-CA-24, 2016-Ohio-2884, ¶ 38. *See also State v. Gwynn*, 158 Ohio St.3d 279, 2019-Ohio-4761, ¶ 16. "[T]he consecutive nature of the trial court's sentencing should stand unless the record overwhelmingly supports a contrary result." *Id.* at ¶ 39.

{¶53} Jarmon points out that neither Esparza nor Rivera were physically injured in any way and that neither victim offered any testimony about any other harm. The encounters were brief, says Jarmon, and the items taken were not that valuable. He says that far more serious robberies occur that involve serious permanent physical harm and death, the loss of items of much greater value, and burglary and other acts of violence.

**{¶54}** Jarmon robbed two people at gunpoint in short order. While no one was physically hurt, the potential for much greater harm was high. Jarmon's presentence-investigative report (PSI) shows an extensive criminal history. His juvenile record includes numerous charges, including charges for burglary and breaking and entering. His adult record lists 20 arrests from 2017 to 2020 and charges for offenses including drug possession, driver licensing violations, assault, and weapons violations. Jarmon also has two probation violations. The PSI also shows that after Jarmon had been charged in the present case, he was subsequently charged in another case with aggravated possession of drugs, domestic violence, and aggravated burglary. We cannot clearly and convincingly find that the record does not support the trial court's consecutive-sentence findings.

**{¶55}** Jarmon's sentence is not contrary to law. The fourth assignment of error is overruled.

### III. Conclusion

**{¶56}** We have overruled each of the four assignments of error presented. The trial court's judgment is therefore affirmed.

M. POWELL, P.J., and PIPER, J., concur.